ADAMSON B. NEWKIRK, Appellant, *v.* ROSELLA CHAPRON, Appellee.

APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

The act repealing the Municipal Court of the city of Chicago was absolute and unqualified.

Courts must look to the act repealing, rather than to the repealed act, to fix upon the powers and duties which remain in existence.

A delay, occasioned by a change of jurisdiction from one tribunal to another, does not impair the obligation of contracts. One remedy may be abolished, if another is substituted, so that a party may obtain the same substantial aid or relief.

It is not necessary that there should be, at all times, a person having power to issue or execute judicial process.

A party having the custody of records does not, from that fact, become authorized to issue process.

A fee bill, when designed to be used as a levy and sale, must issue as process of, and under seal of, the court, and run in the name of the people. The debt and damages in a case cannot be included in it; nor can a clerk issue an execution, by which to collect his fees; nor has an officer of the court control over an execution because his fees are included in it.

A fee bill becomes an execution when issued for the collection of fees for the benefit of the officers to whom they belong.

THIS was an action of ejectment, brought in the Cook County Court of Common Pleas, by the appellant, against the appellee, to recover the possession of a part of the west half of the north-east quarter of section eighteen, in township thirty-nine north, range fourteen east of the third principal meridian.

The declaration was in the usual form under the statute of ejectments, particularly describing the premises, and claiming the same in fee. Plea of general issue pleaded, and joinder by plaintiff.

Upon the trial, the evidence produced by the plaintiff showed a connected title, from the United States down to himself, of the whole of said west half of the north-east quarter of section eighteen aforesaid.

The defendant admitted possession at the time the declaration was served, and set up a title under a sheriff's deed, giving in evidence a judgment of the Municipal Court of the city of Chicago, rendered at the November term of said court, A. D. 1837, against the patentee of said land, in favor of one Robert Gracia.

The defendant offered in evidence a paper, purporting to be an alias execution upon said judgment, issued out of and under the seal of the "Municipal Court of the city of Chicago," tested the 20th day of February, 1839, (five days after the court was abolished,) and directed to the sheriff of Cook county, who, (as appears by indorsements thereon,) by his deputy, levied upon the said above described land, by virtue of said execution, on

the 21st day of February, 1839, and on the 25th day of March following, sold the same to the plaintiff in the judgment.

The defendant further offered in evidence a deed, executed by the sheriff of Cook county, purporting to convey to the purchaser aforesaid, the above described land, in consideration of the sale aforesaid; also deeds purporting to convey to said defendant the title of the grantee in said sheriff's deed.

The defendant further offered in evidence a number of papers, purporting to be process of "the Municipal Court of the city of Chicago," dated after the 15th day of February, A. D. 1839, and in no way connected with, nor having any relation to, the title set up by said defendant, nor any other title to the said land; to the admission of which said paper, purporting to be an alias execution as aforesaid, and said sheriff's deed, purporting to convey the land as aforesaid, and all the deeds purporting to convey to said defendant the title of the grantee in said sheriff's deed as aforesaid, and to the papers purporting to be process of the Municipal Court of the city of Chicago, as aforesaid, in evidence on the trial of the issue aforesaid, the plaintiff, by his counsel, objected. The court below overruled the said several objections, and the plaintiff excepted to the several decisions of the court thereon.

The issue being found for the defendant, the plaintiff, by his counsel, moved for a new trial, on the grounds that the court erred in admitting in evidence the paper purporting to be an alias execution, and the deeds so offered by the defendant, and that the finding of the court was against the law and the evidence, and that it should have been for plaintiff; which motion was overruled by the court, and the plaintiff excepted.

Judgment having been entered for said defendant, the plaintiff prayed an appeal to this court.

This action was tried before J. M. Wilson, Judge, without the intervention of a jury.

The following is a copy of the repealing act:

"An Act to repeal part of 'An Act to Incorporate the City of Chicago.'"

Sec. 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That so much of an act entitled "An Act to incorporate the city of Chicago," approved March 4th, in the year of our Lord one thousand eight hundred and thirty-seven, as establishes a Municipal Court in the said city of Chicago, and all matters connected therewith, be, and the same is hereby repealed.

Sec. 2. That all suits or matters, both at law and in equity, now pending and undetermined in the said Municipal Court, shall be heard, tried and prosecuted to final judgment and execution, in the Circuit Court of the county of Cook, in the same manner as they would be if the said suits or matters had been originally made returnable, or had in the Circuit Court for the said county of Cook; and all records, dockets and papers, belonging to, arising from, or connected with, the said Munici-

pal Court, shall, by the clerk of the said Municipal Court, be transferred and delivered over to the clerk of the Circuit Court for the said county of Cook: *Provided,* That this section shall not be construed as a release of errors that might have been taken advantage of in said Municipal Court: *Provided further,* That it shall be no ground of error in or to any judgment heretofore rendered in the said Municipal Court, that it does not appear by the record or proceedings that the defendant resided in the said county of Cook.

SEC. 3. It is hereby made the duty of the high constable, elected under the provisions of the said act, entitled "An Act to incorporate the city of Chicago," hereby in part repealed, to make returns of all process of summons, executions, or of whatever nature, to the said Circuit Court of the county of Cook; which said Circuit Court is hereby invested with the same powers to enforce a compliance with the law in this behalf, that it would have had if the process had been originally issued from the said Circuit Court; and all executions hereafter to be issued upon any judgment rendered in the said Municipal Court, shall be directed to the sheriff of Cook county.

SEC. 4. That the transcript of any record of the said Municipal Court, of any judgment rendered therein, may and shall be furnished by the clerk of the Circuit Court of the said county of Cook; and any such transcript shall have the same force and effect, to all intents and purposes, that the same would have had, if the suit, process or proceeding, whether in law or equity, had been originally commenced or instituted in the said Circuit Court.

SEC. 5. That the clerk of the said Municipal Court shall deliver over the records, dockets and papers, as provided in the second section of this act, within six weeks after the passage hereof: *Provided,* That nothing in this act contained, shall be so construed as to prevent the clerk of the said Municipal Court from collecting his fees in the manner now provided by law; and the clerk of the said Municipal Court shall, for that purpose, have free access to the said records, dockets and papers, and copies thereof, without costs or charge.

SEC. 6. That the sheriff of Cook county is hereby authorized to give deeds of conveyance for any real estate which may have been sold by the high constable of the city of Chicago, as fully and effectually as he might or could do, if the said real estate had been sold by the sheriff of said county.

SEC. 7. That nothing in this act contained shall be construed to prevent the high constable of said city of Chicago from proceeding to collect executions which have been levied.

Approved February 15, 1839.

J. E. CONE, for Appellant.

G. MANNIERE and I. N. ARNOLD, for Appellee.

SCATES, C. J. The first section of the repealing act, repealed so much of the original act " as establishes a municipal court, in the said city of Chicago, and all matters connected therewith," absolutely and unqualifiedly. The language is clear, plain, and explicit, and cannot be misunderstood. And were we to entertain a doubt of the intention to do so, in this act,

which was to take immediate, full effect, that doubt would be removed by the intention disclosed in its subsequent provisions. By them, every evil and inconvenience likely to arise, or be produced, by the abrogation of the court, were anticipated, and remedied, as far as provision was deemed necessary. Thus clearly, is the legislative intent of an immediate and complete abolition of the court, with all its incidents, manifested by the reënactment and substitution of such provisions as were deemed essential and adequate to obviate any injury, delay, inconvenience or deprivation of any right, of any person, dependent upon or connected with that court.

We cannot interpret these provisions, as manifesting an intention to limit or modify the system or powers in relation to the fact, or extent of the repeal, or abolition of the court; but as a new grant of powers, to obviate any inconvenience or injury from it. And in this light, we must look to the provisions of the repealing, and not the repealed act, to ascertain, and fix upon the powers, and duties which remain in existence. One misapprehension of counsel, I conceive, has arisen from this source. Because the repealing act, granted certain powers to persons engaged in the execution of the system abolished, they have treated it as a partial or modified repeal, and still look to the provisions of the repealed law, by constructing implication, as still in operative force, in a much larger sense, than can be legitimately inferred from the provisions of the new grant.

A liberal and sound rule of construction of statutes, as well as contracts, authorizes, in ascertaining the true intention which is to prevail, a general view to be taken of the situation of the parties, and of the subject matter of the provision. And under a full view of all these, we are authorized to reject a conclusion manifestly at war with the interests involved, and subversive of the general and true intent indicated by the language used, the situation of the parties, and the condition of the subject matter.

Viewing the subject matter of this act—the abolition of the municipal court—in connection with the situation of suitors, and judgment creditors before it, whose remedies are transferred, to be prosecuted before, and administered by, another forum, the Circuit Court, and it evidently may delay temporarily a hearing to the former, and an execution to the latter. The former, with a standing in a court of many terms a year, are transferred to a court of two terms annually; the latter may not sue out final process, until the delivery of the records over, which may not be coerced under forty-two days.

This latter, it is contended, would be a violation of the constitutional right of the judgment creditors in the municipal

court, who, it is claimed, are entitled to a speedy remedy, for the enforcement of their contracts and obligations.

Although the subject is not new, it is, to me at least, a new application of the provisions of the constitutions.

They have totally abnegated all power in State legislation to impair the *obligation* of contracts, and this may well extend, by implication, to the national legislature.

Courts and commentators have argued, and forcibly too—though I know of no decision, because no such case has transpired—that a deprivation, by an act of the legislature, of all remedy, and such modification of the remedy in particular cases, as deprived the suitor of the benefit of his contract, would be unconstitutional. 3 Story Com. Const. 245 to 251; *Ogden* v. *Saunders*, 12 Wheat. R. 284, *et seq.; Bronson* v. *Kinsie et al.*, 1 How. U. S. R. 311; *McCracken* v. *Hayward*, 2 How. U. S. R. 608; *Jackson* v. *How*, 19 John. R. 82, 83.

But we need not anticipate a case of this character. It is not before us in this record. The remedy is not denied, or repealed; it is simply transferred to another, and equally competent tribunal, for administration in another forum, and for application of it by other officers.

While the *lex loci* of the contract is looked to, to interpret, explain, and determine the contract, and its obligations, and the *lex fori*, for the application, and enforcement of the proper remedy, yet it is said neither becomes a part of the contract itself, or of its obligation. 3 Story Com. Const. pp. 247, 248, Secs. 1377, 1378.

A distinction is also taken, and notable, between the *obligation* of the contract, and the proper remedy to enforce it. And it would seem, that while the obligation is sacredly held inviolable, the remedies existing at the making and maturing of the contract, may be abolished, if others remain, or are substituted for its enforcement. 3 Story Com. Const. p. 250, Sec. 1379; 12 Wheat. R. 284, *et seq.;* 4 Wheat. R. 200, *et seq. Sturgis* v. *Crowninshield; Springfield* v. *Hampden Com'rs of Highways,* 6 Pick. R. 508.

Every change or modification of the existing, is not to be treated as an abolition of all remedy.

The legislature may prescribe the times and mode, in which remedies may be pursued, so that some substantial remedy is always left in existence. See same authorities referred to above, and *Mason* v. *Haile*, 12 Wheat. R. 370.

It is not true as a proposition of law, or of fact, that there must be, ever, and continually in being, officially, a person, with power to issue process, and to execute it. There may be vacan-

cies in the office of the judges, clerks and sheriffs, by deaths, resignations, removals, or efflux of time, as well as in changes of jurisdiction, by abolishing and remodeling judicial or ministerial systems. These may occur, where there is no provision in law, for the officer to hold over, until a successor is qualified. And this would not meet the exigency of a death, removal, or resignation.

The office may be vacant, and no one in being, in whose name writs bear test, as well as that from which it issues, or that to which it is directed. From any of these, delays in the instant prosecution of remedies, may be unavoidable, and yet afford no solid ground to allege the want of constitutionality of the law, in not preventing such interruption of the redress.

General bankrupt, insolvent and limitation acts have been sustained as constitutional. And yet in the administration of them, the obligation of the contract has been more essentially affected by this modification and limitation of the remedy, than is ever done by the abolition of one, for another judicial system —one tribunal for another.

Acts of our own, and other States, have been passed, from time to time,—altering, changing, modifying, or repealing the rules of evidence and the systems of practice, and abolishing one and substituting another form of action. And none have doubted the constitutional power, thus to consult and foster the highest supposable public good. Whole systems of pleading and practice have been swept away in New York, Missouri and Kentucky, and supposed reforms substituted, and I am not aware that professional opinion has ever challenged the power.

There are two notable changes of our own judiciary system, by a general repeal of the law under which the circuit courts were organized: when the jurisdiction, causes and general business pending in them were all transferred to other courts, newly created and organized afterwards. See Acts 1819, pp. 381, 382, Secs. 36, 37, 38 ; Acts 1827, pp. 118, 119 and 121, Sec. 2 ; Acts 1841, pp. 103, 104, Secs. 2, 3, 6, 7, 8, pp. 173, 174.

Apart from their effect upon judicial commissions, I am not aware that their constitutionality was ever questioned; and I believe in all respects these acts have been acquiesced in, without a single case to test the question of their effect upon suitors' rights. Though these acts contained provisions for the state of things consequent upon the repeal of the organic law of the court, by validating the acts of the clerks thus repealed out of office, there seemed never to have been entertained any such idea, as that contended for here—that suitors' rights were violalated by a repeal of one court and a transfer of its jurisdiction and business to another,—not even in criminal causes ; or that

the powers and duties of clerks would continue by implication, to keep the court ever open for the emanation of process, for the preservation of suitors' rights to speedy redress.

Many such illustrations might be given of similar effects and consequences from the operation of different laws, and of the constitutionality of which no one ever expressed a doubt.

There may occur delays of this kind in transferring the dockets of justices of the peace, upon deaths, resignations, or removals from the county, as is provided for in the Rev. Stat., Cap. 59, Secs. 110, 112.

In *Martin* v. *Walker*, 15 Ill. R. 377, this court held, that the nearest justice to whom the docket had been transferred might issue execution upon the judgments upon the docket so transferred. And this might, in principle, sustain an execution from the Circuit Court in this case, to which, by this act, these records and judgments were to be transferred.

But I may be allowed to repeat, that the doctrine contended for here is new to me in its application, and would lead us to sanction, as official, the acts of every temporary custodian of the records, as clothed by implication, with the power to issue process, even without a court or jurisdiction in whose name to test it. Fixing the authority and power of a custodian of the records to issue process upon the ground of the suitor's constitutional right to immediate redress when applied for, and we should find difficulty in setting aside an execution issued by the administrator, executor, wife, or friend of a deceased justice, where the transfer was delayed, and application pressed in vindication of constitutional rights thus interpreted.

We are not able to sanction such an interpretation of the provision which secures every one a trial, though speedily and without delay, because it must be conformably to the laws ; and no private person is invested with power, authority, or jurisdiction to issue writs of summons, execution, or other process.

Such a construction, instead of securing, would put our lives, liberties and properties to all the uncertain hazards of violence, fraud and chicanery of the powerful and the cunning, when combinations alone might afford adequate protection in a race and contention, for the custody and possession of the records and *indicia* of office.

We should find difficulty in distinguishing between an execution, or a *capias*, or summons, issued upon these principles and under such circumstances.

We cannot look to or derive any powers from the law organizing the municipal court with a judge, a clerk, a seal, and a jurisdiction, and still bring its officers and their acts within the

general provisions of the laws in relation to the judiciary after the repeal of the court and the abrogation of its jurisdiction; for in relation to such powers and acts, under the repeal they become private and unofficial, both in their acts and persons. We therefore look alone to the new powers granted in the repealing law.

I speak not here of a total destruction of all remedy. It is objected to this delay of forty-two days, that if the legislature may suspend the right and remedy one day or forty-two days, they may do so forever. But such a case as the latter is not before us. And we must not forget that there is, or confound, the distinction between the regulation and the total destruction of right and remedy. The latter will never be intended, and such was the ruling of this court in *Bruce* v. *Schuyler et al.*, 4 Gil. R. 270, *et seq.*, where the power of the auditor to complete a sale of land for taxes, was so far sustained, as to enable him to convey after the repeal of the act under which he sold, there being no provision in the repealing act enabling another to do so.

This principle is constantly applied, in analogy, to sheriffs and constables, who have power to sell after levy, although the writ may expire, or their terms of office. But this principle may not include the transaction of new business, where no personal right or property has accrued or attached. Hence we find special acts or general provisions enabling ex-sheriffs to complete the collection of taxes, &c., and clerks still to recover their fees in certain cases.

So I understand the provisions of this repealing act. It might have been understood and contended that a simple repeal of the organic law of the court abrogated all the judgments and rights of suitors and officers, leaving no mode of enforcing the judgments, prosecuting the pending suits, or collecting fees.

To obviate this difficulty and avert such mischief and injury, the business and jurisdiction of the court was transferred to, and conferred upon, the Circuit Court, and the clerk enabled to enforce the collection of his fees, without expense, in the mode provided by law. A like provision was made for the completion of business in the hands of the high constable.

It is, therefore, in no sense such an extreme case as the one put in argument, of a destruction of rights and remedies, and we need not discuss or decide upon such a case until presented. It is only a simple change of the court and officers, who are to administer the identical same remedy; and only with the delay necessary, to make the change or transfer from one court to the other. And we have shown, as we think, most conclusively, that such delay for such an object, can, in no sense or light, be

regarded as violative of a suitor's constitutional redress ;—nor will it enable a mere private custodian of judicial records officially to issue process as clerk—and much less of a court not in existence—or for the Circuit Court, having another, as clerk.

The next position assumed in the argument is, a power in the clerk, under the repealing act, to issue executions for his fees; and such executions would be regular, and sales under them valid, although the debt or damages of the party might be included. For even should the inclusion of the debt or damages with the clerk's costs, make the execution irregular, yet it would not be void ; and so a sale to a third person would be good.

This reasoning may be just and logical when based upon sound premises, but finds no legitimate conclusion from a false assumption upon which it is based. And that is, that the clerk had a right to collect his fees by *execution.*

In what manner did the statutes authorize clerks and other officers to collect their fees ? The answer is given in the Revised Statutes, p. 249, Sec. 28, and p. 418, Sec. 40, as interpreted and settled in *Reddick* v. *Cloud's Administrators,* 2 Gil. R. 674, to be by certified fee bill, and not by execution.

The special provisions for executions in Rev. Stat., p. 186, Sec. 192, p. 262, Sec. 7, and p. 311, Sec. 19, are not intended as remedies to the clerks or other officers, for the collection of their own fees, but for the collection of fines and costs generally, &c. The repealing act has conferred no power, but preserves by proviso the right to collect in the manner then provided by law, with free access to the records, for that purpose, without charge. The fee bill, when intended to be used for a levy and sale, must issue as process of the court, run in the name of the people, and under seal of the court, as writs of execution. We are by no means prepared to admit, what seems also to have been taken as granted in the argument, that the municipal clerk had, under that proviso, the power to issue these fee bills as executions. He might have obtained this process from the clerk of the Circuit Court, without charge to him it may be, upon fee bills made up by himself.

The proviso may be better understood as rebutting and negating the inference that, by repealing the court, the clerk's claims for fees were canceled, than as intending to authorize him to issue his own process as clerk, or as a private citizen. The fees were still deemed to be due, as to an officer, and collectable by certified fee bill. But the statute, as it then stood and as it still remains, would not authorize an ex-clerk or one out of office to certify, address and seal the fee bill, as process. But such a process, not being before us, we need not decide whether a fee

bill so issued as process, would be valid as such. I have adverted to this view, to show that the provision was more obviously intended as a preservation of his right to his fees, than to confer a power or fix a mode for their collection.

We may admit for the purposes of this case, that the clerk could issue a certified fee bill for that purpose, and yet it by no means follows that, therefore, he might issue also, an execution for that or any other purpose, nor could he include the debt or damages in the fee bill. The clerk has no right to issue an execution for the collection of his fees. That is the process of the judgment creditor, and the costs are included, to reimburse him, for what he is supposed to have paid to the officers, or if not paid, to enable him to pay the fees for which he is liable to them. The officers have no right, power or control, over the execution. If the party will not advance his fees, or sue out his execution for their collection, for the benefit of the officers, to whom they belong, they may enforce the payment against each party from whom due, by this certified fee bill, which becomes, for this purpose, like an execution against the cost debtor.

The clerk took, therefore, no power under the 5th section, to issue an execution for his own costs. Giving the section the broadest construction possible, and it could only authorize him to issue, certify and seal his own fee bills.

But this view will prove too much. For if he has such power before the transfer of the records, can we limit it to the time of the transfer? May not the power continue for his benefit, after the transfer and delivery of the records to the Circuit Court? Such would also be the effect of the general power to issue executions, if it exist at all. And thus would be presented the uncertainty and confusion, growing out of a double clerkship, over the same records, one acting in the name of a court, *functus officio*, and the other in that of the existing jurisdiction. And all this confusion and difficulty, this double-officering, this galvanizing defunct tribunals, this official custodianism, must be encountered, reconciled and submitted to, upon the constitutional postulate, that a party has, in the prosecution of his remedy, a right, at any moment, and without delay, to any appropriate process for its enforcement; and when there is no authorized official in a position to issue such process, it may be done by the temporary keeper of the records.

We do not admit the correctness of either of the two main positions assumed, and upon which the arguments are made, and from which, all the conclusions are drawn, and without one or both of which, it is impossible to sustain this judgment.

The act simply and absolutely repealed the acts organizing

the court, abolished its jurisdiction, and transferred the whole to the Circuit Court. From thence, thereafter, only could executions issue.

It is needless to speculate upon what may have been the effect of a simple repeal, without the provisions transferring the jurisdiction and business, and preserving the rights and remedies of the suitors. Such difficulties may be fairly met when presented. But the present regulation of the parties' remedy, by a change of the forums for its administration, is not to be confounded, although attended with a temporary delay, with its total abolition, and under this perverted view, to overturn the salutary powers of the legislature to amend and regulate the remedies, or to substitute private for public authority, in the administration of them.

We, as much as any one, regret the great mischiefs, growing out of this oversight of authority, for this sale, and the great losses of improvements and disturbance of titles. As far as such considerations could, they have had their full influence with us, as inducements to weigh fully and carefully, and anxiously investigate, all the arguments and reasons offered for our consideration. And the result has been, that we are unable to find any legal foundation for the power claimed and exercised in this case.

Judgment reversed and remanded.

*Judgment reversed.*