# JOHN P. HARRIS *et al.*

## *v.*

# PAUL CORNELL *et al.*

1. PLEADING—*demurrer in chancery.* A demurrer in chancery is always to the merits, and in bar of the relief sought. It admits all the facts which are well pleaded, but not such matters of law as may be suggested in the bill, or which may be inferred from the facts or conclusions upon them which the complainant may have reached.

2. EXECUTION—*void, when issued from a court which has been abolished.* Where a court is abolished by an act of the legislature, and the whole jurisdiction transferred to another court, an execution issued out of the

court so abolished is void, and a sale made under such an execution is a nullity.

3. PARTIES—*who are within the meaning of the law, so as to be concluded by decree.* Whilst it is true that parties to a decree in chancery are concluded by it, it is also true that only parties whose interest can be affected can be parties to a judicial proceeding.

4. So, where a bill was filed seeking to affect the title to certain real estate, which had been claimed by one who, before the filing of the bill, had been adjudged a bankrupt by the District Court of the United States, under the bankrupt law of the United States, of 1841, and an assignee of his estate appointed, it was *held*, that although the bankrupt was named as the party, he was not, within the meaning of the law, a party to the proceeding for the purpose of concluding those claiming title to the land, through him, and that they were not affected by the decree rendered in the case.

5. The assignee in bankruptcy in such case was an indispensable party to the proceedings, being the holder of the title of the bankrupt, and if he was not made a party, no decree affecting the property could bind him.

6. LIEN OF JUDGMENT. A judgment is a lien upon real estate for seven years, provided an execution is issued upon it within a year, but not otherwise.

7. Where a party obtained a judgment in 1837, but had no execution issued until in 1840, and in the meantime a purchaser from the judgment debtor had put a deed for the land purchased by him on record, the title of such purchaser was unaffected by the judgment or execution.

8. PRACTICE — *how to present the question of laches.* The question whether a complainant in a bill in chancery has been guilty of such *laches* as to preclude him from obtaining the relief sought, is usually presented by answer, and, it seems, is not proper to be considered on demurrer.

9. . CHANCERY—*impeaching a decree on the ground of fraud and perjured testimony in obtaining it.* A decree was obtained directing a sheriff to execute a deed, in pursuance of a sale made under an execution which was, in fact, issued by a court which had been abolished, but which, in the bill upon which the decree was rendered, was falsely alleged to have been issued out of a court to which the jurisdiction of the abolished court had been transferred, and there was no defense made, the cause referred to the master, and a witness testified before him that there was no deed for the land in controversy, appearing of record, to one of the non-resident defendants, when, in fact, such deed was, and had been for nearly twenty years, on record, and the master accordingly reported that said non-resident defendant had no title to the land. Upon a bill filed by the

heirs of the non-resident defendant, to impeach this decree for fraud and perjured testimony in procuring it, setting up these facts and showing that before the bill was filed on which said decree was rendered, the non-resident defendant, to whom the deed of record appeared to have been made, had been adjudged a bankrupt in the District Court of the United States, under the bankrupt law of the United States, of 1841, and an assignee appointed, who was not made a party to the bill upon which the decree sought to be impeached was rendered, it was *held,* that the bill showed such a state of facts as required an answer, and it was error to sustain a demurrer to it.

10.　ASSIGNEE IN BANKRUPTCY—*holds real estate of deceased bankrupt in trust for his heirs after debts are barred.* Where the owner of real estate is adjudged a bankrupt, and an assignee is appointed, and no claims are filed and proved against the estate, and the Statute of Limitations has run against all his debts, and the bankrupt is dead, the assignee holds the real estate of the bankrupt as a naked trustee for the heirs of the bankrupt.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. JOHN WOODBRIDGE, for the appellants.

Messrs. SLEEPER & WHITON, for appellees Clement and Merton; Messrs. PAGE & PLUM, for appellees Bliss and Stevens; Messrs. DENT & BLACK, for appellee Stinson.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The bill of complaint set out in this record was exhibited on the chancery side of the circuit court of Cook county, at the February term, 1871, by John P. Harris and three others, complainants, claiming to be heirs at law of one Benjamin Harris, deceased, and against Paul Cornell, Elisha C. Fellows and others, the scope of which will appear from the allegations therein.

It appears the parties to the bill make claim of title to the premises through the same person, namely, one Mark Noble, Jr.

The title of Benjamin Harris, the ancestor of complainants, comes through regular conveyances from the patentee

of the land, one Jonathan Smith, who first conveyed it, by deed of May 20, 1836, to one Robert M. Draper, who, on the 17th June of the same year, conveyed it by deed to Mark Noble. Jr., by a misdescription. By deed containing the same misdescription. dated October 6, 1836, Noble and wife conveyed the land to Benjamin Harris, which deed was not recorded until August 1, 1837.

One Jefferson Gardner, at the July term, 1837, of the Municipal Court of the city of Chicago, recovered a judgment against Noble for two hundred and fifty-two dollars and sixty-eight and one-half cents, on which no execution issued or other proceedings had until February 5, 1840, on which day a *fi.fa.* issued out of the clerk's office of said court, under which the sheriff, on the 27th November, 1840, sold the land to Gardner, but issued to the purchaser no certificate therefor, or if issued, the same was lost or mislaid. In September, 1847, Gardner and wife executed a deed to Nathan W. Watson, by the same erroneous description, of this land, who, on May 10, 1849, executed a deed with the same wrong description, to one Charles B. Phillips. Phillips, on the 28th June, 1849, executed a deed with the same wrong description, to Electa Watson, who, having intermarried with one Garnsey, on the 10th of August, 1853, executed a deed for an undivided half of the tract, with a correct description thereof, to the defendant Paul Cornell, and on the 11th May, 1854, she, with her husband, executed a deed for the other undivided half, with a correct description, to the defendant Elisha C. Fellows. By this, it appears appellants' title is derived wholly through deeds from the patentee—appellees Cornell and Fellows through and under the judgment obtained by Gardner against Noble.

In August, 1854, Cornell and Fellows impleaded, by bill in chancery, in the Cook circuit court, Draper, Mark Noble, Jr., Benjamin Harris and others named therein, to reform these deeds misdescribing the land, and to establish their title to the same, and to require the sheriff to execute a deed

under the sale to Gardner. At the June term, 1855, a decree passed reforming the deeds, and finding that Gardner had never received a certificate on the sale of the land by the sheriff, nor a deed for the same, and that he was entitled to a deed, and ordering the sheriff to execute such deed, to be delivered to complainants, Cornell and Fellows, to be by them recorded in the proper office for the benefit of all parties interested in the premises. It was further ordered, that these complainants, as the grantees of Electa Garnsey, late Watson, stand seized of the premises, that the deeds with erroneous descriptions be reformed, etc.

In pursuance of this decree, the sheriff, on the 18th October, 1855, executed a deed to Jefferson Gardner.

It is further alleged in the bill now before us, that Gardner well knew that he derived, by his purchase, no legal or valid title to the land, and that his said several grantees well knew the illegality and invalidity of Gardner's claim; and that Cornell and Fellows, before their purchase, well knew of the illegality of the sale by the sheriff to Gardner, and that they confederated and planned to defraud complainants of their title, right and interest to the same, and they aver that they had no knowledge of these proceedings by Cornell and Fellows until a short time before filing their bill of complaint, averring that their father, Benjamin Harris, at the time of filing the bill by Cornell and Fellows, and for many years previous, was absent from this State, and had no knowledge of any attempt by any one to divest him of his right and title; that he had been residing in the State of Iowa many years previously, and died there in August, 1863. It is further alleged, that no execution issued on the judgment of Gardner against Noble in sufficient time to make the same a lien upon this land, and that it had ceased to be a lien when the same issued, more than a year and a day having elapsed, and that the said execution was issued out of the Municipal Court after the same had been abolished by law, and was therefore void.

It is also averred, that the amount bid by Gardner for the land was but thirty dollars, while the same was worth many thousand dollars. The Cornell and Fellows decree is also challenged, on the ground that material evidence introduced in the case by them was false, and obtained by perjury. a witness having sworn, on the hearing, that no deed from Noble to Harris for this land was of record in the recorder's office, when, in fact, there was such a record in book S of deeds, at page 315, made August 1, 1837, and that the decree finding there was no such deed, was untrue and erroneous. It is also alleged, that no process was served upon Benjamin Harris, and none of the defendants answered the bill.

By an amendment to the bill, it is alleged that Benjamin Harris, after August 19, 1841, filed his petition in the District Court of the United States, for the then District of Illinois, to be adjudicated a bankrupt, under an act of Congress of that year to establish an uniform system of bankruptcy throughout the United States, the petition alleging he was a bankrupt, and to which was a schedule of his indebtedness, and duly verified ; that the court adjudicated him to be a bankrupt, and appointed Cyrus J. Miller his assignee, whereby all the property of Harris was vested in Miller, as such assignee, concluding with an averment that all these things were done while the bankrupt act was in force, but precise dates can not be stated by reason of the destruction of the records by fire ; that at the time Cornell and Fellows filed their bill, Miller had the legal title to this land, and resided in this State, but was not made a party to the bill, and was never notified of the pendency of that suit, claiming, by reason of failing to make Miller a party, the decree and sheriff's deed are void.

It is then averred, that by several acts of the General Assembly of this State, certain actions founded on promissory notes, bills of exchange, book accounts or simple contracts, were barred after five years from the time the cause of action accrued—averring that all the debts of the bankrupt,

Harris, were of this nature, and the causes of action on all his indebtedness accrued more than five years prior to filing this bill of complaint, and thereby all of said indebtedness was barred, and ceased to be a lien on the bankrupt's estate, whereby the assignee became a mere naked trustee of this property for the heirs of Harris, and that they have a right to demand and have a conveyance of the land from the assignee. The benefit of another statute of limitations, barring all actions on bonds or other evidences of indebtedness, in writing. after ten years, is invoked, averring that causes of action on all the indebtedness of the bankrupt accrued more than ten years, and were extinguished thereby, and claiming the assignee thereafter became a mere naked trustee for the heirs of the bankrupt, and liable to convey the premises to them on request. It is then alleged, that about thirty years have elapsed since the title of the assignee in bankruptcy to the land accrued, and none of his creditors have proved their debts against him or asserted any claim to the bankrupt estate, or to its proceeds, claiming that after such a lapse of time they can not make proof of their debts. alleging that thereby the debts are paid and discharged, and the assignee has become a mere trustee of the premises for the heirs of the bankrupt, and is bound to convey the same to them on request.

The prayer of the original and amended bill was, that so much of said decree as finds that Benjamin Harris has no title or interest of record in said $59\frac{75}{100}$ acres. in said northwest quarter, section 13, 38, 14. prior to said bill of complaint of said Paul Cornell and Elisha C. Fellows, and that said Cornell and Fellows stand seized of said land, be set aside ; that said deed of the sheriff of Cook county, or so much thereof as relates to said land last above described. be declared void, and be stricken from the records of the recorder's office of Cook county ; that the execution issued February 5, 1840, upon said judgment, in favor of Jefferson Gardner, against said Mark Noble, Jr., be declared void, or that complain-

ant's title to said $59\frac{75}{100}$ acres be declared not to be impaired thereby, and that the cloud upon their said title to said land, caused by the levy of said execution and the sale thereunder, be removed, and complainants' right and title thereto be declared; that said Miller may be decreed to hold the premises received by him as assignee in bankruptcy, in trust for the heirs of said Benjamin Harris, and be required to convey four-tenths thereof to said John P. Harris, Benjamin P. Harris, Chauncey W. Harris and Mary J. Smith, and that partition may be had so as to set off to said last named four persons their shares in severalty, and that they may be let into possession thereof.

At the April term, 1871, the default of Doe and other defendants was entered.

The defendants in real interest demurred generally to the bill. The demurrers were sustained, and the bill dismissed for want of equity, and complainants appeal.

It was omitted to be stated in the proper place, that in the bill filed by Cornell and Fellows it was alleged, that on the 13th of August, 1838, Harris and wife made a mortgage of one undivided 59 acres of said section to one Gholson Kercheval, to secure the payment of two thousand dollars, on certain terms and conditions specified in a certain bond executed at the same time, averring that when Harris executed the mortgage he had no title of record, or interest in the land described in it. And in the report of the master in chancery, to whom the case was referred, it is found that Harris, at the time of the execution of the mortgage, or at any time prior to the commencement of that suit, had no right, title or interest in the premises, so far as appeared by the records in the office of the recorder of Cook county; and the court, by its decree, declared this mortgage, so far as it might purport to be a lien on the premises, was null and void, and the premises released therefrom.

The record of this cause is made an exhibit in appellants' bill, and its accuracy not questioned.

The questions raised by the demurrer are interesting. and have been argued elaborately and with great ability, but it seems to us the case can be disposed of without considering all of them.

It is alleged in appellants' bill of complaint, that the *fi. fa.* which issued on the judgment recovered by Gardner against Noble in the Municipal Court of the city of Chicago, bearing date February 5, 1840, and on which the land in question was sold to Gardner, was issued after that court had been abolished by law.

A demurrer in chancery is always to the merits, and in bar of the relief sought. and proceeds upon the ground that, admitting the facts to be true as stated in the bill, still the complainant is not entitled to the relief he seeks. It admits all the facts which are well pleaded, but not any matters of law which may be suggested in the bill. or which may be inferred from the facts or conclusions upon them which the complainant may have reached. *Stow* v. *Russell et al.* 36 Ill. 18.

It can not be questioned. the fact that the *fi. fa.* issued after the abolishment of the court is well stated, and the demurrer admits the fact. The legal consequence must be, the writ was void, in virtue of which no valid sale could be made. The sale in question was made under this writ to Gardner, on the 9th of March, 1840. The court was abolished by act of the General Assembly, approved February 15, 1839.

It was held in *Newkirk* v. *Chapron,* 17 Ill. 344, that the act was absolute and unqualified, abolished the jurisdiction of the Municipal Court, and transferred the whole to the circuit court, from which thereafter executions could issue, and from that court alone. The sale, therefore, under the execution so issuing from the Municipal Court. was a nullity.

To the same effect is *Lee* v. *Newkirk,* 18 ib. 550.

It is urged, however, by appellees, that the fact is proved by the Cornell and Fellows decree that the execution issued from the circuit court. It is so alleged in their bill, but the fact is not so found, either by the master in his report, or

by the court in the decree, and it is admitted by this demurrer, that it, in fact. issued from the Municipal Court, it being so alleged in appellants' bill of complaint.

It is argued, however, by appellees, if the fact be so, and that the sale to Gardner under this writ was absolutely void, and that by operation of law the legal title to the land vested in Harris as assignee. appellants' case would not be aided, so long as this Cornell and Fellows decree stands. Counsel must mean Miller, as he was the assignee of Harris, he, Harris. not claiming. at any time. as assignee of any one.

On this proposition lies the difficulty.

The object of the bill of complaint of appellants. among others, is to impeach this decree as having been obtained by fraud and by perjured testimony.

The bill on which the decree was based was filed by the complainants therein as holders by regular conveyance of the title of Gardner, acquired by him under this sale, and in order to compel the execution of a deed by the sheriff on Gardner's certificate of sale. and to induce the court to decree as prayed, complainants falsely alleged in their bill that the execution on which the sale was made to Gardner issued from the circuit court. No defense was made to the bill. Harris himself was a non-resident, and had been for years. and had no other notice of the proceeding than such as is effected by publication. All the defendants were defaulted, and a reference made to the master to take proofs of the matters alleged in the bill.

Among the proofs taken by the master was the testimony of one Julius Mulvey, a witness produced by complainants, who testified he had carefully examined the records of the title to the land in controversy, and, so far as record thereof can be found in the recorder's office of Cook county, that there is no record in that office of any conveyance of this land to Benjamin Harris, or any right or interest in Harris in the premises. This testimony was taken by the master on the 12th day of June, 1855, in presence of complainants, and on

which the master in chancery reported to the court that said Benjamin Harris had no title of record to the said parcel of land, and that his mortgage to Kercheval should be declared null and void as to the parties holding the title of record. The court decreed in all things in substantial conformity with the master's report, there being no person present to except to it. This false testimony, added to the false allegation in their bill, secured the decree in their favor.

We say the testimony of Mulvey was false, for the fact is not denied that a deed of conveyance for these premises from Noble to Harris was on record in the recorder's office of Cook county on the first day of August, 1837, nearly twenty years before he testified, and was on record at the time he testified. But it is said Harris was a party to these proceedings, and it was in his power to prevent the decree, by proper proofs on his part, and it is now too late for him or his heirs to contest this decree.

Here is the important point in the case. The rule is well settled, that a party to a decree in chancery or to a judgment at law is concluded by the decree or judgment. Another rule is, that all parties whose interests may be affected, and those only, can be parties to judicial proceedings at law or in chancery. In this sense, was Harris a party to these proceedings? We are inclined to the opinion he was not, and if not, his heirs or privies are not affected by it.

It is admitted by the pleadings that, in 1841, whilst the Bankrupt Act of that year was in force, some fourteen years before the Cornell and Fellows bill was filed, Harris had been adjudicated a bankrupt, and one Cyrus F. Miller appointed his assignee, in whom all Harris' estate, real and personal, vested, by operation of that law. From that day thenceforth Harris was as a dead man, so far as property rights were concerned, another owner appearing in the person of his legal representative, his assignee, Miller. Harris being dead to all possessions, he had not the capacity to be a party to any proceeding touching the same. He could not bring an action

for any interest he may have had in property prior to the adjudication and the appointment of an assignee, nor could he be made a party to defend such property. This being so, Harris was not, in legal contemplation, a party to the Cornell and Fellows proceedings and decree.

The Bankrupt Act, *proprio vigore*, divested the bankrupt of all his property rights, and vested them in the assignee, who thenceforth held the absolute title to it, and no principle is better settled than this, that a party holding the legal title to property which is made the subject of judicial investigation, is a necessary and an indispensable party to such proceedings. If he is not, no decree which may be passed affecting such property can bind him. No citations of authority are necessary on this point. It is so self-evident as to require neither argument nor authority to sustain it.

It is urged by appellees, that Harris could have taken advantage of this defect in the Cornell proceedings, at the proper time, by plea or otherwise, but as he was not a party to the proceedings, for the reasons we have given nothing can be urged against him for non-action on his part.

It is somewhat singular, and worthy of note and comment, that the party having the legal title to this land was a resident within the jurisdiction of the court at the time the bill of Cornell and Fellows was filed, and amenable to the process of the court, and he was not made a party, whilst Harris, who had no interest, and was non-resident, was made a party. It is no answer, to say Miller's rights as assignee were unknown to the complainants, for the records of the District Court in which the adjudication in bankruptcy was had, and by which Miller's rights arose, were open public records, and notice to all the world.

We have said, by this adjudication the title of Harris to this land became vested in Miller, but it is denied that Harris had title at any time.

Here, dates are of importance. Noble's deed to Harris bears date October 6, 1836. On that day Harris had all the

5—80TH ILL.

title Noble had, and his title is not disputed, for appellees claim through and under Noble. How was Harris deprived of that title? It is answered, before he recorded his deed from Noble, which he did not do until August 1, 1837, Gardner obtained a judgment against Noble on the 7th of July preceding.

This judgment would be a lien for seven years, had Gardner sued out an execution within one year after the rendition of the judgment. This he did not do, and did not sue out his execution until the 5th of February, 1840, nearly three years thereafter. In the interval, on August 1, 1837, Harris placed his deed on record, and he became vested with a legal recorded title. By not suing out the execution within the year, Gardner lost his lien, and Harris' title became impregnable. This principle is fully established in *Fitts et al.* v. *Davis et al.* 42 Ill. 391, and again affirmed in *Eames* v. *The Germania Turn Verein*, decided at Sept. T. 1874. As between Harris and Gardner, the title of Harris was paramount. His deed was on record August 1, 1837. These are the facts as they appear in the record. yet, in 1855, when Cornell and Fellows exhibited their bill of complaint, they alleged therein that the execution on Gardner's judgment was issued from the circuit court of Cook county, and after reference to the master to take proofs, a witness was produced by them. who testified he had examined the records of Cook county, and no deed was on record conveying any interest in this land from Noble to Harris, when, in truth and in fact, it had been on the records nearly eighteen years, and was then on record. It was on this allegation and this false-testimony the court passed the decree.

Can there be any doubt the court was imposed upon? Can it be supposed the court would have passed such a decree, had it known the writ was issued out of the office of a defunct court, and would it have held Harris had no title, if it had been informed his deed was on record, and had been near eighteen years? It is not possible. It seems to us the case

is fully within the principles of *McConnel* v. *Gibson et al.* 12 Ill. 128.

There is another fact of which the court was not advised, in the Cornell and Fellows proceedings, and it was important—that is, that Harris had been adjudicated a bankrupt, and his estate, of which this tract of land was part, had vested in an assignee, and that assignee not a party to the proceedings.

This bill seeks to impeach the Cornell and Fellows decree, for fraud, and the facts constituting the fraud being admitted by the defendants, and well stated in the bill, the court should not have dismissed the bill, but retained it for an answer. It may be, all these charges can be satisfactorily explained, but, as the case now stands, they are admitted to be true, and being true, appellants are entitled to a decree.

But it is said, in argument, they have been guilty of *laches;* they have delayed too long now to gain the favorable ear of a court of equity. That question is usually presented by answer, and will not be discussed now. It may be remarked, however, that Cornell and Fellows did not take any steps to perfect their title until nearly or quite thirteen years had elapsed after Gardner's purchase at sheriff's sale, and there is no allegation or proof on either side that actual possession has been taken of the premises, or any expenditure of money thereon in improvements or otherwise. There are no such facts alleged in the Cornell and Fellows bill.

We will barely remark, on the other point, that Miller is now, the debts of the bankrupt being outlawed, a naked trustee for appellants; that this principle seems to have been settled by this court at the September term, 1875, in the case of *Hardin* v. *Osborn*, where it was held the purposes of the trust having been accomplished, the owner of the trust became, by operation of law, reinvested with the legal title, and could sue in ejectment.

We have not designed to go fully into the merits of all the

questions raised in argument, but only so far as to determine the bill is a proper one for an answer.

The decree will be reversed, and the cause remanded for such further proceedings as may be consistent with this opinion.

*Decree reversed.*