# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

JOHN ALLEN *et al.*

*v.*

GILBERT WOODRUFF *et al.*

*Filed February 4, 1880—Rehearing denied September 17, 1880.*

96 11
130 361
96 11
152 372
96 11
166 239
167 64
96 11
173 201
96 11
179 249
96 11
88a 148
96 11
91a 6303
96 11
209 5318

1. ALLEGATIONS AND PROOFS—*material allegations only need be proved.* It is not essential to support a decree in favor of a complainant that all the allegations of the bill be proved precisely as charged. All that the law requires is that the material allegations shall be substantially proved.

2. SAME—*statement of erroneous conclusions.* If the actual facts are stated correctly in a bill, which is all the law requires, allegations in respect to what the pleader supposes to be the legal effect of such facts, which proves entirely erroneous, will not conclude or prejudice the complainant. His rights depend upon the actual facts stated, and not upon the erroneous conclusions of the pleader with respect to them.

3. Where the actual facts are correctly stated in a bill and proved, it is the duty of the court to render such decree and grant such relief as the law requires from such facts, without regard to the theory of the pleader in framing the bill.

4. SPECIFIC PERFORMANCE—*by assignee for security.* If the purchaser of land can not maintain a bill for the specific performance of the contract of purchase, his assignee taking the contract as an indemnity against loss as a guarantor can not maintain a bill to enforce the same for his benefit.

5. SAME—*discretion.* Every case in which a specific performance of a contract is sought, depends largely upon its own circumstances, and a decree of specific performance is, to a large extent, a matter of discretion. But this discretion is not an arbitrary one, but a legal discretion, to be exercised in conformity with certain fixed and well recognized principles which govern courts of equity.

6. SAME—*waiver, after delay in payment.* Where a vendor of land, long after the payments mature, accepts payments, this will be a waiver of his right at that time to declare a forfeiture for want of prompt payment, and if he afterwards accounts with the purchaser as to the balance due, and stands by and allows the purchaser to pay all taxes and make expensive improvements upon the land, a tender to him of the sum due by either the purchaser or his assignee at any time before a forfeiture is declared will be good, and the contract may be specifically enforced, notwithstanding time is made of the essence of the contract and there has been a considerable delay in offering to pay.

7. RECORDING LAW—*purchaser protected.* Interests in land acquired through contracts of purchase fall within the protection of the recording acts. Therefore, although another may be interested as a part owner of land sold by contract, if the record fails to show that interest, and shows the whole title in the vendor, the purchaser from the apparent owner of record, without notice of the real facts, will hold the title, and so of his assignee.

8. STATUTE of FRAUDS—*express trusts.* In all cases where a deed or other instrument of conveyance is absolute on its face, and the grantor or his assignee seeks to defeat its operation by showing that the deed, though absolute in form, was, in fact, executed upon certain express trusts, the grantee may invoke the protection of the Statute of Frauds by requiring proof of these alleged trusts to be made in writing; but the statute was not enacted for the benefit of those seeking to defeat the operation of such deeds by showing that they were made upon trusts not appearing upon their face,—only for those claiming title under them.

9. EQUITABLE MORTGAGE—*delivery of contract for deed.* The delivery of a contract for the purchase of land by the purchaser to one to indemnify him against loss by becoming a guarantor for the purchaser, without any written assignment thereof, constitutes an equitable mortgage, and a subsequent written assignment to another party by mistake, who has no interest in the same, is simply inoperative, where no words of conveyance are used. Even an indorsement of the contract to the guarantor after the delivery will not change the character of the transaction.

10. A written assignment of a deed or contract for the conveyance of land is not necessary to the creation of an equitable mortgage, and the only possible effect of such written assignment is, that when the instrument and assignment have been recorded, it will afford constructive notice of the mortgagees' rights, and also as evidence of the fact of the assignment in case of a dispute.

11. INTEREST—*stops after tender.* It is a well settled rule, recognized alike by courts of law and equity, that a tender properly made and kept good is a complete answer to any claim for interest after the tender.

12. PARTIES—*in chancery—in general.* The general rule is, that where a particular title is assailed, all persons claiming through it should be made parties,

but not those having no interest in the controversy, and who claim under an independent title.

13. SAME—*party not affected by decree not necessary.* Where a party, after a decree in bankruptcy, passing his property and rights to an assignee, assigned a contract by delivery as an equitable mortgage to indemnify a surety, it was held, on bill by the mortgagee for a specific performance of the contract, that the assignee in bankruptcy was not a necessary party, as no relief was sought against him, and he had no interest in the litigation.

14. SAME—*how advantage taken for want of proper party.* Most generally, where the want of a necessary party appears upon the face of the bill, the objection must be made by demurrer. Where not apparent on the face of the bill, it should be raised by plea or answer. In cases where the right or title of an omitted party must necessarily be passed upon or affected by the decree, the objection may be taken at the hearing.

15. BANKRUPTCY—*limitation of suits by assignee.* Under sec. 5056 of Rev. Stat. of the United States limiting suits by or against assignees in bankruptcy, in force at the time a party was adjudged a bankrupt, where the bankrupt remains in possession of property under a contract of purchase for more than two years after the assignee's right of action accrues, and the latter takes no steps to recover the property, he will be barred.

WRIT OF ERROR to the Appellate Court for the Second District; the Hon. NATHANIEL J. PILLSBURY, presiding Justice, and the Hon. JOSEPH SIBLEY and Hon. EDWIN S. LELAND, Justices..

On the 6th of April, 1876, defendants in error filed a bill in chancery in the Winnebago county circuit court against John Allen, Thomas Allen, Ephraim Sumner, Joseph Brantingham, Freeman Graham, John H. Warren and the "Rockford National Bank," the last four defendants being mere nominal parties. The bill alleges in substance that on or about the 5th of July, 1871, John Allen entered into a written contract with the board of supervisors of Winnebago county to erect and build a jail for the county, and, at the request of the said John Allen, complainants, at the foot of said contract, executed in writing their guaranty of the faithful performance of the same on the part of the said John Allen; that on the 18th of the same month John Allen entered into a written contract with Hough & Co., of Indian-

apolis, Indiana, by which Hough & Co. agreed with Allen to furnish the material and do the wrought iron work for said jail, in consideration of which Allen thereby obligated himself to pay to Hough & Co. $9000 in four equal payments, as the work progressed; that before or at the time of delivery of said contract to Hough & Co., complainants, at the request of the said Allen, executed at the foot of the same their written guaranty of the faithful performance thereof on the part of the said John Allen; that complainants executed guaranties upon each of said contracts under the agreement and undertaking of the said John Allen that he would indemnify them against loss by reason of their said guaranties; that in pursuance of Allen's undertaking to indemnify complainants against loss on account of their guaranties, the said John Allen, on the 24th of July, 1871, indorsed and delivered to complainants an article of agreement between Ephraim Sumner and the said John Allen, dated November the 1st, 1866, by which Sumner, for the consideration of $700, to be paid by Allen in specified installments, obligated himself, upon payment thereof, to convey to the said Allen "the north half of lot nine (9) and lot 10 in block forty-nine (49), in Haskell's addition to the town, now city, of Rockford, in the county of Winnebago, and State of Illinois;" that on the 1st of April, 1871, as shown by an indorsement on said agreement, there was then due Sumner thereon the sum of $495.30; that said John Allen failed to pay Hough & Co. for the material delivered and work done by them under their said contract with him, and that Hough & Co. claimed a large amount of money on account of such failure; that by reason of Allen's default, Hough & Co., about the 6th of August, 1872, commenced a suit against complainants in the United States Circuit Court for the Northern District of Illinois, which resulted in a judgment against complainants upon their said guaranty for the sum of $5000 damages and $65.45 costs of suit, which judgment, on appeal by complainants to the United States Supreme Court, was affirmed, with costs, at its December term,

1875; that about the 11th of March, 1876, complainants were compelled to and did pay said judgment, which then amounted to $6054.70; that in addition thereto complainants were compelled to pay, and did pay, $114.75 costs in the Supreme Court of the United States, and $1000 attorney fees in said court; that on the 25th day of January, 1876, complainants tendered the said Ephraim Sumner $688, being the full amount then due him from the said John Allen on his contract for the purchase of the above mentioned premises, and demanded a deed therefor, which the said Ephraim Sumner refused to execute; that complainants have ever been ready and willing, and hereby offer to pay to said Sumner the money due on said contract; that there is a block of houses on part of said premises, making three tenements, which are respectively occupied by Joseph Brantingham, Freeman Graham and John H. Warren; that the rents of said buildings amount to $1000 or more a year, and that the same in equity belong to complainants until reimbursed their expenditures on account of having guarantied the performance of Allen's engagements with the said Hough & Co.; that complainants have no other security than the lands and premises mentioned in said contract with said Sumner for the repayment to them of the moneys paid by them on account of said guaranty; that the said John neglects and refuses to pay or account to complainants for the money paid by them for him; that one Thomas Allen, the son of the said John Allen, pretends to have some claim in or to said premises. But complainants insist that the said Thomas Allen has no rights or interest in the same as against them, and charge that the claim set up by him is intended to deprive them of their rights and delay and hinder them in enforcing the same against the said John Allen, etc.

The bill waives answers under oath, and prays for the appointment of a receiver, and that an account be taken of the moneys paid by complainants as guarantors of John Allen, and for a personal decree against him for the same,

and that the premises mentioned in the contract between John Allen and Sumner be sold to pay and satisfy said decree, and that upon payment by complainants to Sumner of the balance due him from Allen he be decreed to convey to complainants said premises, to be held by them as security for their said claim against said John Allen, and for general relief.

John Allen, Thomas Allen and Ephraim Sumner file separate answers, denying the equities of the bill and demanding proof of the charges therein contained.

John Allen, by way of special defence, charges in his answer that, although the contract for the purchase of the lots and premises mentioned in complainants' bill is drawn in the name of John Allen, yet it so happened through inadvertence and mistake; that it was understood and intended, at the time, that the contract was to be made out in the name of Thomas Allen, and not John Allen; that the purchase was made for the latter's benefit, and that the whole of the consideration was paid by him. He further claims by his answer that the alleged assignment by John Allen of the contract with Sumner to complainants, being a contract with respect to an interest in land, is within the Statute of Frauds and Perjuries, and is therefore void.

It is also charged that, prior to the assignment of this contract to complainants, to-wit: on the 30th of December, 1868, the said John Allen was duly declared a bankrupt by the United States District Court for the Northern District of Illinois, and that an assignment of all his property, both real personal, was made to one G. Curtis on or soon after the said 30th day of December, 1868, which complainants well knew, and that by virtue of said assignment all the right, title and interest of the said John Allen was transferred to, and became vested in, the said G. Curtis.

The answer of Thomas Allen is substantially the same as that of John Allen with respect to the special defences just stated and relied on by John Allen.

Complainants filed general replications to the several an-

swers, and the cause was heard at the January term, 1878, of the Winnebago county circuit court, resulting in a decree for complainants substantially as prayed for in their bill. At its December term, 1878, this decree was affirmed by the Appellate Court for the Second District, and the record of the proceedings in the latter court is now before this court for review.

Mr. E. B. SUMNER, and Mr. L. F. WARNER, for the plaintiffs in error.

Messrs. LATHROP, MARSHALL & TAGGART, for the defendants in error.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

We do not propose to follow counsel in the very elaborate discussion of the facts presented by this record. Upon some of the controverted questions the evidence is in direct conflict and wholly irreconcilable, and any attempt of ours to harmonize it or show that it is the result of honest misapprehension, would most likely fail, and even if successful, would not compensate for the amount of labor it would necessarily involve. We shall, therefore, content ourselves with a statement of the general conclusion reached with respect to the facts and a notice of such of the objections urged against the decree of the circuit court as we deem necessary to a presentation of our views upon the legal principles actually involved in the controversy, and which must determine the rights of the parties thereto.

In considering the objections urged against the decree of the circuit court we shall not attempt to follow the order or terms in which they are expressed by counsel for defendants in error, but shall pursue such order and set forth the objections in such general terms as will, in our judgment, enable us to present the legal aspects of the case in the most perspicuous light; and when it is believed that our efforts in

this direction will be aided by considering two or more of such objections together we shall do so.

Among other objections urged, it is claimed generally that the evidence does not warrant the decree and that the relief granted by it is based upon a theory different from that claimed in the bill, and that there is a substantial variance between the allegations in the bill and the proofs. After a very careful examination of the record we are satisfied that the circuit court properly found the equities of the case with the complainants, and that the decree rendered by that court is substantially correct, and fully warranted by the weight of the evidence. While all of the allegations of the bill were not proved precisely as charged, yet we are of opinion that so many of them as were material to sustain the decree rendered were substantially proved, and this is all the law requires. It often happens, as in the case before us, that in framing a bill in chancery the pleader, after having correctly stated the actual facts of the case, which is all the law requires, proceeds to make some additional allegations with respect to what the pleader supposes to be the legal effects of those facts, which may be entirely erroneous, yet the complainant in the case is not to be concluded or prejudiced by such unnecessary statement. His rights must depend upon the actual facts stated, and not upon the erroneous conclusions of the pleader with respect to them. So in this case, it may be conceded that the pleader in framing the bill misapprehended the legal effect of the mistake of Wells in making the assignment of the Sumner contract to the Rockford National Bank instead of to defendants in error, and also that he was mistaken as to the principles upon which the court in such case would grant relief, and still it does not follow that the decree is erroneous because relief is granted on a different theory from that contemplated by the counsel. For inasmuch as the actual facts are correctly stated in the bill, it was the duty of the court to render such decree and grant such relief as the law required from the actual facts stated and proven

on the hearing, without regard to what the pleader may have contemplated in framing the bill.

It is urged with much apparent earnestness that, although the Sumner contract was made out in the name of John Allen, yet that Thomas Allen alone was interested in it; that his father in procuring the contract was acting on his behalf, and that but for the mistake of the parties it would have been made out in the name of Thomas Allen instead of John Allen.

This position is hardly reasonable, to start out with. How John Allen could sign an instrument of this kind in his own name, and at the same time suppose some one else was signing it, or that he was signing it for some one else, is difficult to conjecture.

The truth is, the testimony of the Allens upon the subject of Thomas' interest in the contract, and the premises with respect to which it was made, is not creditable to either of them, and will not bear analyzing.

The weight of evidence clearly shows that the claim of Thomas Allen to the premises in question was, as against defendants in error, fraudulent and void.

It is also urged that this suit, so far as relief is sought against Sumner, is in the nature of a bill for a specific performance, and that defendants in error have no rights as against him which John Allen himself could not enforce. And it is further claimed that under the facts in proof John Allen could not have maintained a bill for specific performance. It must be conceded that if, under the facts before us, John Allen could not have maintained a bill for specific performance, it follows as a legal sequence that the bill in this case can not be sustained. And this really presents the only question in the case about which there is any serious difficulty, and that is rather apparent than real.

Every case of this character must depend largely upon its own circumstances, and whether the chancellor will or will not in a given case decree the specific performance of a con-

tract is to a large extent a matter of discretion. Yet this discretion is not an arbitrary one. It is a legal discretion, to be exercised in conformity with certain fixed and well recognized principles which govern courts of equity in the exercise of this branch of their jurisdiction, and where the decree of the court below is in conformity with these general principles a court of review will not reverse unless error has otherwise intervened.

In *Fish* v. *Leser et al.* 69 Ill. 394, the general doctrine here stated is thus expressed: "Courts of equity will not always enforce the specific performance of contracts. Such applications are addressed to the sound legal discretion of the court, and the court must be governed to a great extent by the facts of each case as it is presented."

To the same effect is the case of *Franz* v. *Orton et al.* 75 Ill. 100, and many other cases that might be cited.

Recurring now to the facts in this case, it will be remembered that the contract between Sumner and John Allen bears date November 1, 1866, and the last payment matured on the first of November, 1869. At this time there was but little paid on the contract, and by the terms of it there is no question but that Sumner would, upon Allen's default after tender of a deed to the premises and demand of balance due upon the contract, have been authorized to declare a forfeiture of the contract, and thereby have defeated all claim and right to a specific performance of it. But Sumner, for reasons we suppose satisfactory to himself, did not see proper to take this course. More than a year after, to-wit: on the 28th of December, 1870, he receives a payment on the contract of four hundred dollars ($400), thereby recognizing the contract as a present binding obligation, and also thereby waiving the provision in it making time of the essence of the contract.

Again, on April 1, 1871, a year and several months afterwards, there is an accounting between the parties, and the balance due on the contract is fixed at $495.30. Time runs on, and in 1874–5 Allen makes valuable improvements on the

lots in question, amounting in value to some $4,000. Both before and after the making of the improvements Allen is in the possession of the premises as owner and paying the taxes thereon. Can it be supposed that Sumner during all this time stood quietly by permitting Allen to expend this vast amount of money in improving the property and paying all the taxes thereon without intending that he should have the benefit of these outlays? To have permitted these large expenditures to be made by Allen after the contract had matured, with the purpose of afterwards declaring a forfeiture and appropriating the property thus enhanced in value to his own use without any compensation to Allen, would have been the grossest injustice on the part of Sumner. We are pleased to say, however, that nothing appears in the evidence to indicate that Sumner contemplated anything of the kind; but his entire conduct goes to show that he fully recognized the rights of Allen in the premises, and intended to do justice by him. But whatever his private purposes may have been, it is an unquestioned fact that, prior to the time defendants in error made the tender of the balance due from Allen to Sumner on the contract, the latter had never declared or attempted to declare a forfeiture of the contract, or otherwise attempted to question Allen's rights under it. Suppose, after Sumner had permitted Allen to go on and expend some $4000 in improving the property in the manner we have stated, Allen had made the tender of the balance due on the contract before any forfeiture had been declared, in the same manner that defendants in error did, can it be doubted for a moment that a court of equity would have compelled Sumner to convey the premises to Allen upon the payment of the balance due? We think not.

In *Peck et al.* v. *Brighton Company*, 69 Ill. 200, which was a bill for specific performance by appellee against appellants as heirs at law of P. F. W. Peck, deceased, it appeared that on the first of November, 1857, Peck, ancestor of appellants, sold a lot of land to one Iglehart, to be paid for in instal-

ments, the last one maturing on the 29th of October, 1859, the total consideration being $3375. On December 12, 1857, there was a payment of $200, and on the 6th of January, 1868, ten years afterward, Iglehart conveyed the property to one Woodward, and the latter conveyed to appellee. Iglehart, on his purchase, took possession and made improvements to the value of $3000. In October, 1871, Peck died, and on the 4th of March, 1872, his heirs attempted to declare a forfeiture. On the same day appellee tendered the heirs of Peck $6000 balance due under the contract and demanded a deed, which being refused, appellee filed a bill for specific performance, and it was held by this court that upon the foregoing state of facts appellee was entitled to the relief prayed, and a decree of the court below to that effect was affirmed. It will be observed that both the amount in default and delay in payment in that case are much greater than in the case before us, and nothing appears to excuse the delay more in one case than in the other. In that, as in this, it was claimed that there had been a forfeiture of all rights under the contract, but the defence did not prevail, nor can it prevail here, and the decision in that case must be held conclusive of this.

Again, it is urged that Blake was an equal owner with Sumner of the premises in question, and that his rights are wholly ignored by the decree. There are two answers to this objection. In the first place, both at the time of the making of the contract and at its assignment to defendants in error the title of record to the premises was in Sumner alone, and it is not so much as charged that defendants in error at the time of such assignment had any knowledge or notice of Blake's having or pretending to have any claim to or interest in the premises, and it is well settled that interests in land acquired through contracts of purchase fall within the protection of the recording acts. In the second place, whatever interest Blake may at one time have had in the premises, it does not satisfactorily

appear that at the time of the commencement of this suit he had any interest whatever.

It seems also to be claimed by plaintiffs in error, that the assignment of a contract for the purchase of land as security for the payment of money or the performance of some collateral undertaking is the creation of an express trust, and that therefore the terms, conditions and purposes of the assignment must be expressed in writing, otherwise it will be obnoxious to the Statute of Frauds; and with this view of the law the statute is interposed and expressly relied on in this case.

There are certain statements in the bill with reference to the supposed legal effect of the assignment in question, to which we have heretofore adverted, that seem in some degree to justify the view taken by plaintiffs in error. But, as already observed, the rights of a complainant must be determined by the facts charged in the bill and proved on the trial, and not by the mere conclusions of the pleader.

The facts with reference to the transfer of the Sumner contract to defendants in error as charged in the bill and shown by the weight of testimony, are substantially these:

The transaction was mainly between John Allen and Gilbert Woodruff, the latter acting on behalf of himself and the other sureties of Allen. The latter came into the bank of which Woodruff was President and handed him Allen's contract with Hough & Co. for his signature to the guaranty which was written at the bottom of it, and it was signed by Woodruff accordingly. At the same time Allen handed Woodruff the Sumner contract, stating that he gave it to him as a collateral or indemnity for signing the guaranty, and it was accepted as such. Woodruff, after receiving it, perhaps supposing that it would be best to have the evidence of its transfer in writing, without consulting Allen at all handed the contract to Mr. Wells, one of the clerks in the bank, requesting him to write an assignment thereon, which he accordingly did; but instead of making the assignment to Woodruff, as he should have done, it was made to the Rock-

ford National Bank, and was in that form signed by Allen and then laid away in the vault of the bank, without Woodruff discovering the mistake.

It is not necessary to inquire whether the assignment of the contract in question, in the manner stated, constitutes an express trust falling within the Statute of Frauds. It is sufficient to say that, admitting such to be the fact, plaintiffs in error are not in a position to avail themselves of the statute in question. The assignment must be treated as if made directly to Woodruff, for the evidence shows. that such was clearly the intention of the parties, and it is a familiar doctrine that courts of equity will regard as done that which was agreed to be done, and the utmost that can be claimed with reference to this assignment is, that upon its execution, whatever interest the bank thereby acquired, it held the same in trust for Woodruff and his co-sureties. But that is a matter wholly between them and the bank, and the bank, though a party to the suit, has interposed no claim to any beneficial interest in the subject matter of the assignment.

The Statute of Frauds, requiring express trusts to be manifested or proven in writing, was enacted for the benefit of those claiming title under deeds or other instruments absolute on their face, and not for the benefit of those seeking to defeat the operation of such deeds by showing that they were made upon trusts not appearing upon their face. In all cases, where a deed or other instrument of conveyance is absolute on its face, and the grantor or his assignee seeks to defeat its operation by showing that the deed, though absolute in form, was, in fact, executed upon certain express trusts, the grantee may invoke the protection of the statute by requiring proof of these alleged trusts to be made in writing. So, in this case, if Thomas Allen or those claiming under him were to attempt to defeat this assignment by showing that it was executed upon certain express trusts, Woodruff might doubtless invoke the statute for his protection, but upon what

theory Allen can avail himself of it we are at a loss to determine.    There is nothing in this objection.

It is further insisted that the decree of the circuit court is erroneous in this—that it did not allow Sumner interest on the balance due on the contract.    It is a well settled rule, recognized alike by courts of law and equity, that a tender properly made and kept good is a complete answer to any claim for interest.    *Stow* v. *Russell et al.* 36 Ill. 18.

Finally, it is claimed that the bill upon which the decree rests is fatally defective in not making the assignee in bankruptcy of John Allen a party.    It is to be observed that no objection of this kind was urged in the court below.    The only thing that appears in any of the answers upon this subject is the fact of bankruptcy and the appointment of an assignee, and it is insisted that by reason thereof John Allen ceased to have any interest in the subject matter of the suit, but it is not intimated in any of the answers that the proceedings were defective for want of proper parties.    Most generally an objection of this kind, when it appears upon the face of the bill, must be made by demurrer.    When it is not apparent on the face of the bill it should be raised by plea or answer.    In cases, however, where the right or title of an omitted party must necessarily be passed upon or affected by the decree to be rendered, the objection may be taken at the hearing.

But the case before us is not one of that character.    The claim here sought to be enforced was one in which the assignee of Allen had no interest.    The complainants in the bill could not have, and did not seek, any relief as against the assignee. The scope of their bill was to reach a supposed interest of John Allen in certain property.    The controversy between complainants and defendants was a matter in which the assignee had not the slightest concern.    Whatever claim he had to the property in question, upon the showing of defendants in error themselves, was paramount to that of John Allen, which defendants in error were seeking to reach, and no good reason existed for compell-

ing him to become a party to a controversy in which he had no interest, for the purpose of establishing his rights in the property, which no one was questioning, and against whom no relief was asked or could be granted. He is not in the slightest degree affected by the decree rendered, and if he has any rights in the property, he can enforce them just as well after as before decree.

The views here expressed are fully sustained by the rule laid down by Story in his work on Equity Pleadings, and the decisions of this court. Story's Equity Pleadings, sec. 230, 237. *Deniston et al.* v. *Hoagland*, 67 Ill. 265, and *Harris et al.* v. *Cornell et al.* 80 Ill. 54, are cited by counsel for plaintiffs in error as laying down a rule different from that here stated.

It is a familiar principle, that in determining what is decided by a particular case, the general expressions of the court must be regarded as limited by the facts appearing in that particular case, and when the language of the court in *Harris* v. *Cornell* is confined to the particular facts in that case there is nothing in it in conflict with the views expressed in this.

That case was a bill in chancery at the suit of the heirs at law of one Harris, seeking to set aside a decree for fraud, rendered in 1855, and to which Harris appeared to have been a party.

The title of certain real estate was involved in the proceeding. Harris, about the 19th of August, 1841, had been declared a bankrupt, and his estate transferred to one Miller, as assignee. But most of the material facts upon which the decree was rendered arose prior to the bankruptcy of Harris and while the title to the lands in question was in him; and it further appeared that at the time of the litigation which resulted in this decree, Harris had left the State and ceased to exercise any control over the lands in controversy, having surrendered every thing to the assignee. Under this state of facts it was held in *Harris* v. *Cornell*, *supra*, that the assignee was a proper party to that proceeding.

The decision in that case is in conformity with the general rule that where a particular title is assailed all persons claiming through it should be made parties, but not those having no interest in the controversy and who claim under an independent title. To illustrate: If the contract in question had been transferred to defendants in error prior to Allen's bankruptcy, and a controversy had arisen between him and defendants in error as to their mutual rights under such transfer, then the assignee would, under the general rule above mentioned, have been a proper party, and the case would be analogous in principle to *Harris* v. *Cornell.*

The language of the opinion in *Harris* v. *Cornell* is, in some respects, broader than was necessary for the decision of that case, and, so far as it is in conflict with the views here expressed, it must be regarded as modified.

But even in the case just supposed, after so great a lapse of time after the assignee's right accrued without interposing any claim to the property in question, it may be doubtful whether, under the Bankrupt act, it would have been necessary to have made the assignee a party.

Section 5056 of the Revised Statutes of the United States provides as follows: "No suit, either at law or equity, shall be maintainable *in any court* between an assignee in bankruptcy and any person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee; and this provision shall not, in any case, revive a right of action barred at the time when an assignee is appointed."

This provision of the Bankrupt act was in force when John Allen became a bankrupt, on the 30th of December, 1868, and, continued in force till the General Bankrupt act was repealed.

At the time of the assignment of the Sumner contract, to-wit, on the 24th of July, 1871, John Allen was in the full and undisputed possession of the property in controversy, in no manner recognizing any right thereto in the assignee, and

had so been in possession from before the date of his bankruptcy up to that time, and the Federal Statute of Limitation, above cited, had at that time fully run.

It is clear, that at that time, the assignee could have maintained no suit in respect to the property or contract against Allen or any one claiming under him. And hence, even in the case supposed as already suggested, it is questionable whether, under the limitation act above cited, the assignee would have been a necessary party. Be this, however, as it may, it is quite clear, that under the facts in this case he was not a necessary party to the bill.

The equities of this case are decidedly with defendants in error, and perceiving no substantial error in the decree of the circuit court, it was therefore properly affirmed by the Appellate Court, and the judgment of that court must be affirmed.

*Judgment affirmed.*

SCOTT, J., dissenting:

Every question made on the record in this case, which is itself very voluminous, has been elaborately argued, but, in my opinion, one objection taken to the decree is fatal. That I will discuss as briefly as I can to present my view of the case. On the 5th day of July, 1871, one John Allen entered into a contract with the county of Winnebago to erect and build a jail for the use of the county. In the prosecution of the work, Allen made a contract with the firm of Hough & Co. to furnish all the material, manufacture and deliver in proper position all the wrought iron work for such building, the cost of which when completed would amount to a large sum of money, to be paid in installments as the work progressed. In consideration of making the agreement, complainants guaranteed the faithful performance of the same on the part of Allen. After the contractors had delivered a large amount of the iron work and placed a considerable portion of it in position, an objection was raised by the building committee, by Allen and the

architect in charge of the building, that the iron work fur-
nished was not in compliance with their contract with Allen,
nor in compliance with Allen's contract with the county,
and the contractors were forbidden to proceed further with
the execution of their contract. Suit was brought by
the contractors against complainants on their guaranty of
Allen's contract, in the United States Circuit Court, in which
they claimed a large sum of money to be due to them for
materials furnished and work done under their contract with
Allen, which he refused to pay. On the trial of that cause a
judgment was rendered against complainants for a large
sum of money, which was afterwards affirmed in the Supreme
Court of the United States. That judgment, with costs and
attorney's fees, complainants were compelled to pay, and did
pay and discharge, whereby Allen became indebted to them
in a large sum of money. Concerning these facts there is no
disagreement between the parties.

On the 1st day of November, 1866, Allen purchased of
Ephraim Sumner the lots which are the subject of this liti-
gation, and received a bond or agreement for a deed when the
purchase money should be fully paid. The contract price was
$700. There had been paid and indorsed on the contract $500,
and under the date of April 1, 1871, by writing on the contract
signed by the respective parties, it was stipulated there was
due on such contract $495.30. On the 24th day of July, 1871,
John Allen assigned and transferred all his interest in the
contract with Sumner to the Rockford National Bank.

The bill in this case is framed on the theory that the
guaranty of complainant of the contract of Allen with the
iron contractors, although it bears date the 18th day of July,
1871, was not, it fact, signed until the 24th day of the
same month, and at the time of signing such guaranty John
Allen, as security therefor, and as security for their guaranty
of his contract with the county, assigned his contract for a
deed with Sumner to complainants and delivered it to one of
them, but by inadvertence on the part of the clerk writing

the assignment, the Rockford National Bank was named as assignee instead of one of the complainants.

After John Allen had assigned the contract with Sumner to the bank, either he or his son, Thomas Allen, made improvements on the property to an extent that made it valuable, so that it produced a considerable income.

Complainants tendered Sumner the amount they allege was due him for the balance of the purchase money on his contract with Allen, and demanded a deed for the property, and then brought this bill, in which they claim they are entitled to a conveyance of the premises from Sumner, and to have the lots sold by reason of the assignment to the bank, which they allege was for their benefit, to reimburse them for the money they were compelled to pay on account of their guaranty of Allen's contract with the iron contractors, and asked that a receiver be appointed to collect the rents pending the litigation. The circuit court decreed the relief sought, and that decree was afterwards affirmed in the Appellate Court.

One objection is taken in this court that I consider fatal to the present decree. It appears that John Allen, prior to May 10, 1869, was adjudged a bankrupt in the District Court for the Northern District of Illinois, in which the land is situated, and the deed of one of the registers in bankruptcy of that court was given in evidence, conveying and assigning to Ira R. Curtis, assignee of John Allen, all the property, both real and personal, of whatsoever nature or description, in which the bankrupt had any interest prior to the 30th of December, 1868. Although the contract with Sumner is in the name of John Allen, it is a matter of contention whether it in fact belonged to him or to Thomas Allen. Be that as it may, the bill proceeds on the ground the property embraced in the contract with Sumner belonged to John Allen, and that the claim to it put forth by Thomas Allen was fraudulent as to the creditors of the former.

As was said in *Harris* v. *Cornell,* 80 Ill. 54: "The Bankrupt act, *proprio vigore,* divested the bankrupt of all his prop-

erty rights, and vested them in the assignee, who thenceforth held the absolute title to it, and no principle is better settled than this, that a party holding the legal title to property which is made the subject of judicial investigation is a necessary and an indispensable party to such proceedings." Conceding that John Allen was the owner of the property embraced in the contract with Sumner, which complainants must do to obtain any standing in court, then as he was declared a bankrupt long before the assignment of the contract to complainants, or to the bank for them, the assignee was a necessary and indispensable party to a proceeding concerning the title to the property, that it might be judicially determined whether the bankrupt at the time of the alleged assignment had any interest in the property which he could assign to complainants, or to the bank for their benefit. Adopting the theory on which the bill is framed, that the contract with Sumner was made with John Allen, and for his benefit, and not for the benefit of his son, Thomas Allen, then it follows logically that the equitable title he acquired to the property under that contract passed to his assignee in bankruptcy, and at the time of the assignment he had no interest in the contract or property that he could assign to any one. The Limitation act, Rev. Stat. United States, page 982, section 5057, can have no application to a case like the one before us. *Phelps* v. *McDonald*, 99 U. S. Rep. 298.

The decree presents a case where the court takes the title to the property and places it in one who is an entire stranger to that title and in no way connected with it.

I am familiar with no principle upon which this can be rightfully done.