WILLIAM M. WATSON

*v.*

AMELIA J. WHITE, Admx. *et al.*

*Filed at Ottawa October 29, 1894.*

1. CONTRACTS—*time the essence—waiver.* An agreement that time shall be the essence of a contract may be waived, either by the consent or conduct of both parties, or of that party for whose benefit such agreement is made.

2. SAME—*right to forfeit for time suspended—notice.* Where time is stated to be of the essence of a contract to convey land, if both parties, by a mutual course of conduct, treat the time clause as waived or suspended, one of them cannot suddenly insist upon forfeiture, but must, in order to then avail himself of the time clause, give reasonable, definite and specific notice of his changed intention.

3. FORFEITURES—*not favored in chancery.* Forfeiture is a harsh remedy, and in a court of chancery readily yields to the principle of compensation, if fair dealing and good conscience seem to so demand.

4. TENDER—*in actions for specific performance.* To entitle a purchaser to demand a deed and maintain a bill for specific performance, it is sufficient if he is ready and offers to pay any sum that may be found due, and to comply with the contract on his part, and the technical rules that govern pleas of tender in actions at law are not applicable.

5. PARTIES—*in specific performance—death pending suit.* Upon the death of a party pending a suit for specific performance of a contract for the sale of land, all persons who can, by any possibility, have an interest in the contract under such deceased party should be made parties, including trustees in a will, on whom are imposed active trusts with respect to the property.

APPEAL from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

Mr. W. T. BURGESS, for the appellant.

Mr. CONSIDER H. WILLETT, and Mr. H. H. C. MILLER, for the appellees.

Mr. JUSTICE BAKER delivered the opinion of the court:

John P. White, since deceased, filed this bill of complaint in the circuit court of Cook county on the 11th day of October, 1889, against Henry P. Fix and William M. Watson. The object of the bill was to enforce the specific performance of a contract in writing made by Fix for the conveyance of twenty-two acres of land in Cook county to White. The contract bore date the 15th day of February, 1889, and its contents may be summarized thus: Fix agreed to sell, and White to buy, the land at the price of $18,000, of which $500 was then paid in cash as earnest money, and to be applied on the purchase when consummated, and $4000 within five days after the title had been examined and found good, provided a good and sufficient warranty deed, conveying a good title to the premises to White, should then be ready for delivery. The residue of the purchase money was to be paid in three equal annual payments of $4500, in one, two and three years from date, with six per cent interest, payable semi-annually, to be secured by notes and mortgage or trust deed on the premises. A complete abstract of title or merchantable copy was to be furnished within a reasonable time, with a continuation thereof brought down to date. In case the title, upon examination, was found materially defective within ten days after the abstracts

were furnished, then, unless the material defects were
cured within sixty days after written notice thereof, the
earnest money was to be refunded and the contract be-
come inoperative.   If White failed to perform the con-
tract promptly on his part at the time and in the manner
specified, the earnest money, at the option of Fix, was to
be forfeited as liquidated damages, including commissions
payable by Fix, and the contract was to become null and
void.   And the contract contained this clause :   "Time is
of the essence of this contract and of all the conditions
thereof."

On February 22, 1889, an abstract of title, brought
down to the 18th of that month, was delivered to Joseph
N. Barker, the attorney of White, for examination.   On
February 26, 1889, White left for California, and did not
return until the 26th of the following April.   In the mean-
time he left with his attorney, Barker, over $13,000 of
securities, to dispose of, as far as necessary, and make
the payments required by the contract, provided said
attorney found the title good, and he notified Morey &
Co., the Chicago agents of Fix, who lived in Kentucky,
that he had done so, and he also arranged to have the
notes and trust deed drawn and sent to him for execution.

On March 23, 1889, Barker delivered to Morey &
Fessenden, the agents of Fix, his written opinion in regard
to the title.   He specified eight objections to the title.
In the view we take of the case it is not essential to go
into the details of these objections.   They were of four
kinds : to the uncertain description of the land in two of
the deeds ; to the inchoate rights of dower of the wives
of certain of the grantors, if they had wives ; in respect
to the identity of the heirs of a deceased owner of the
land ; and in respect to a written offer of sale and written
acceptance that appeared on the records.   Some of the
defects were material, and the objections urged to them
reasonable.   In regard to other objections it is not so
clear that they were well grounded.   But be this as it

may, the supposed defects were all curable, and the evidence shows that neither Fix nor his agents claimed that the objections were not honest objections, or that they, or any of them, were trivial, or that any of the defects pointed out were immaterial. On the contrary, it was virtually admitted that the defects were material defects in the title, and it was promised to remedy them all. Indeed, Fix, in his very answer filed in this case, substantially admitted these things to be as stated. That answer, as it appears in the abstract of appellant, was, in part, as follows : "Admits that Joseph N. Barker examined said abstract, and gave his opinion March 22, 1889 ; sets out a copy of it as part of his answer ; admits that said opinion was delivered to H. C. Morey & Co. for defendant, March 23, 1889, who at once undertook to cure the defects in the title mentioned therein; * * * avers Morey & Co. proceeded at once to correct said defects," etc.

It is to be noted that by the terms of the contract Fix was to cure the material defects in the title within sixty days after written notice thereof, and that time was to be of the essence of the contract and of all the conditions thereof. On March 23, 1889, written notice was given that both the deed of Martha A. Averitt and husband and the deed of Nancy J. Leonard and husband were deficient, in that they did not sufficiently describe the land. These were, most assuredly, material defects in the title. The deeds curing these defects were not recorded until June 27, 1889, and the continuation of the abstract showing them was not made until July 12, 1889. But what is more important, the Averitt deed was not executed and acknowledged until the 24th day of May, 1889,—a date more than sixty days subsequent to the time that written notice was given of the defect in the original Averitt deed.

After the return of John P. White from California, Barker was discharged as attorney. At that time a number of the objections to the title had not been removed.

Fix and appellant contend that on or about the 4th day of June, 1889, all of the defects had been cured to the satisfaction of White. Appellees contend otherwise, and John P. White, in his lifetime, contended otherwise. Just what transpired in the conversations between White and Morey, and in the conversations between White and Fessenden, it is difficult to tell. The testimony is quite conflicting, and it is not necessary in this suit to settle the conflict.

For the purpose of curing one of the defects pointed out by Barker, a quit-claim deed was obtained from one John W. Stewart, and one of the claims urged by White at the hearing before the master was, that the wife did not join in the deed and waive her dower; and in addition to this, it there appeared that Morey declined to record the deed, because he thought that he, himself, might have some interest in the property. The master, in his report to the court, found that, under the circumstances, the deed was not sufficient to remove the objection. He also found that two certain affidavits did not satisfactorily remove the objections that they were respectively intended to meet, and it would seem from the findings and decree of the circuit court that it concurred in the view taken by the master.

On the 10th day of July, 1889, H. C. Morey & Co. mailed to John P. White a letter, which read as follows:

"CHICAGO, *July 10, 1889.*

"*John P. White, Esq., Reaper Block, City:*

"DEAR SIR—We are in receipt of a letter from Mr. H. P. Fix, in which he states that he is desirous of closing the sale of the acre property that has been pending for some time, without further delay. Unless the same is closed before Saturday next (the 13th inst.) we shall cancel contract, and the earnest money shall be forfeited as per the terms of the contract.

"Very respectfully,

H. C. MOREY & Co."

The letter brought about an interview between White and the agents of Fix, and the results were, that the continuance of the abstract by the abstract dated July 12, 1889, was obtained, and no forfeiture of the contract was declared or attempted on July 13.   Prior to this time, Fix (his wife, Martha, joining with him,) had executed a deed conveying the land in controversy to John P. White, and had placed it in the hands of H. C. Morey & Co., to be delivered to him when the defects in the title were cured and the trust deed and three notes delivered, and the remaining $4000 paid in cash.   A draft of a trust deed, with the date left blank, and three unsigned notes of $4500 each, also with blank dates, had been handed by H. C. Morey & Co. to White, and on or about July 20, 1889, it was agreed between the parties that the deferred payments, amounting to $13,500, should bear interest from June 3, 1889, and thereupon White filled the blanks in the deed and the notes with the latter date, and signed the notes and executed and acknowledged the trust deed, but retained both trust deed and notes in his possession until such time as the deed to him should be delivered.   Some five days thereafter, on July 25, 1889, White paid $1500 more of the cash payment to H. C. Morey & Co., and they endorsed on the written contract the following receipt:

"For the consideration of fifteen hundred dollars ($1500), the receipt of which is hereby acknowledged, the within contract is extended for thirty (30) days from July 26, 1889, making two thousand dollars total earnest money. July 25, 1889.                              H. P. FIX,
              By H. C. MOREY & CO., *Ag'ts.*"

And the contract with that endorsement was retained by said agents.   During the specified thirty days, and up to September 7, 1889, nothing seems to have been done by either party.   White did not deliver the trust deed and notes and made no further payment, and neither Fix nor his agents did anything further in the way of obviating objections to the title.   On the day last mentioned H. C.

Morey & Co. delivered to White a communication, addressed to him, bearing that date, and signed "Henry P. Fix, by H. C. Morey & Co., Agents." Its contents were, in substance, as follows:

"SIR—Owing to your failure to perform your agreement with Henry P. Fix, dated February 15, 1889, for the purchase of the following real estate," (describing the land in question,) "you are hereby notified that said agreement, and all extensions thereon, is forfeited, and the earnest money paid thereon is hereby forfeited as liquidated damages, including the commission payable to me, and I hereby declare said contract, and all extensions thereon, null and void."

Thereupon, on September 8, 1889, White filed a copy of the Fix-White agreement in the office of the recorder of deeds of Cook county, for record.

On October 4, 1889, Fix and wife made to William M. Watson, appellant herein, a warranty deed to the land in question, for the named consideration of $20,000, and it was recorded October 5, 1889. Three notes, for $5000, $7000 and $8000, respectively, were executed by appellant to Fix for the consideration money, and the notes were secured by a mortgage on the premises. The same week that the deed and mortgage were made appellant paid to Fix $50 on the notes. Appellant and Fix also entered into a written contract in regard to the land, and that contract was as follows:

"This indenture witnesseth, that in relation to the sale of a certain piece of twenty-two acres of land, situated in this Cook county, State of Illinois, by Henry P. Fix to W. M. Watson; that inasmuch as said Henry P. Fix did, on the 15th day of February, 1889, contract to sell the tract of land to J. P. White, and as said White has placed such contract of record, now, if the courts shall decide that said contract has not been violated, and that said White can hold said H. P. Fix to fulfill his part of that contract,

then and in that case said W. M. Watson agrees to give said Henry P. Fix a quit-claim deed to said property as above. It is further agreed between Henry P. Fix and W. M. Watson, that if there is a delay in getting said J. P. White's claim to the title to said piece of land removed, then there shall be as much time added to the notes without interest that said W. M. Watson has given to H. P. Fix, as is consumed by such delay."

On October 7, 1889, John P. White discovered that the deed from Fix to appellant had been executed and recorded, and, as stated in the beginning hereof, he exhibited this bill of complaint in the circuit court on the 11th day of said October. Pending the litigation, John P. White died, and the suit was revived in the names of Amelia J. White, Lulu W. Rhodes and Edward P. White, devisees and legatees under his will, and of John Edwin Rhodes and Edward P. White, trustees under said will, and of Amelia J. White, administratrix, and John Edwin Rhodes, administrator, both with the will annexed, of the estate of said deceased, and of Edward P. White as surviving partner of John P. White & Son.

It is useless to state details in regard to the bill and answers and other pleadings, and the reference to and proceedings before the master. Afterward, by leave of the court, an amended and supplemental bill was filed by appellees, wherein it was stated that the objections to the title to the land mentioned in the original bill and in "Exhibit B" to said bill existed against other lands than those mentioned in said bill, and that since the filing of said bill parties interested in said other lands had cured the defects to the title mentioned in said objections, which facts are shown in detail by the evidence reported by the master, and that they, the appellees, were willing to accept the title to said land without reference to the defects mentioned in said "Exhibit B," and that they formally waived the defects to said title, and that they prayed, etc., and it was thereupon ordered by the court,

*nemine contradicente*, that the answers and replications
should stand to the bill as amended. The cause was
heard in the circuit court upon the pleadings, and the
master's report, and the evidence which is made a part
of said report, and the objections and exceptions to said
report, and upon the motion to overrule said exceptions,
and for a decree, etc. The court decreed a specific per-
formance of the contract of February 15, 1889, made by
John P. White, deceased, and Henry P. Fix, and also by
its decree settled the equities as between Fix and appel-
lant, and also settled the rights and equities as among
appellees themselves. Appellant took an appeal from
the decree to this court and assigned errors on the record,
and Fix came into court and joined in the assignments of
error made by appellant.

Appellant, when he took the deed from Fix, had notice
of the rights of White, and even entered into the written
contract with Fix, in regard thereto, that has already
been quoted. That in respect to the rights and equities
of the representatives of White he merely stands in the
shoes of Fix, goes without saying.

By the terms of the agreement here in question time
was made of the essence of the contract. It was not only
provided therein that if the purchaser should fail to per-
form the contract promptly on his part, at the time and
in the manner therein specified, then that "the earnest
money paid as above,"—*i. e.*, the $500 first paid by White,
—should, at the option of the vendor, be forfeited as
liquidated damages and the contract become null and
void, but it was also expressly stipulated, "time is of the
essence of this contract and of all the conditions thereof."
But an agreement that time shall be of the essence of a
contract may be waived or set aside, and more especially
so in the contemplation of a court of chancery, either by
the mutual consent or conduct of the parties, or by the
consent or conduct of the party in whose favor and for
whose benefit such stipulation is made. (*Allen* v. *Woodruff*,

96 Ill. 11 ; *Palmer* v. *Ford*, 70 id. 369 ; *Peck* v. *Brighton Co.* 69 id. 200 ; *Morgan* v. *Herrick*, 21 id. 481 ; *Bishop* v. *Newton*, 20 id. 175.) In the case at bar, both parties, by tacit but mutual consent, seem to have waived and ignored, from the very start, the provision that time should be of the essence of the contract and of all the conditions, stipulations or specified terms thereof. The substance of one stipulation was, that the purchaser should have only ten days after the abstract of title was furnished him in which to examine for, discover and report material defects in the title. But, as matter of fact, the purchaser or his attorney did not give to the vendor or his agents notice of the defects claimed to be material defects until twenty-eight days after the abstract was delivered, and yet neither the vendor nor his agents assumed or attempted to declare a forfeiture of the contract or of the $500 earnest money, or even complained of the delay.

Another term of the agreement was, that unless the material defects should be cured within sixty days after written notice thereof, then the earnest money should be refunded and the contract become inoperative. At least eight defects in the title were pointed out. Some of them were undoubtedly material defects. All of them were impliedly admitted to be material. The vendor undertook and promised to cure them all. There can be no valid claim or plausible pretext that one of the defects that was, without peradventure, a material defect in the title, was cured within the limited sixty days. We refer to the Averitt deed, curing an insufficient description in a former deed. And other defects pointed out were, as we understand the record, in the same category. But be this as it may, one instance is sufficient for the purposes of the argument. And yet, although the defects were not all obviated within the time fixed by the contract, the purchaser did not ask that the $500 should be refunded and contract be inoperative, or raise any objection on account of the delay beyond the stipulated period, and

the vendor and his agents quietly assumed, and have con-
tinuously since assumed, that there were no *laches* or viola-
tions of the contract on his or their part.   And this can
only be so upon the assumption that by tacit understand-
ing the stipulations in regard to forfeitures, and refunding
moneys, and time being of the essence of the contract
and of all the conditions thereof, were mutually waived.

It is true that H. C. Morey & Co. notified the purchaser,
on July 10, 1889, that unless the sale was closed before
the 13th of that month they would cancel the contract
and forfeit the earnest money.   But this was done with-
out authority or directions from their principal.   The
sale was not closed before the 13th, and the contract was
not canceled or the $500 forfeited before or on the day
stated, or any attempt made to do either.   From the
surrounding circumstances and the subsequent events it
is probable that the agents were uneasy on account of
the delay in closing the deal, and anxious to get the pur-
chaser to the point of agreeing upon a date for the notes
and mortgage securing the deferred payments, so that
the $13,500 would begin to run at interest.  At all events,
the result reached in respect to the suggested forfeiture
of July 13 indicates that it was not understood, then, that
the stipulations in regard to forfeitures and essence of the
contract were active, and insisted upon as conditions.

As we have already seen, White paid an additional
$1500 of the purchase money on July 25, 1889, and a receipt
for the same was endorsed on the contract, said receipt
stating that the contract was extended for thirty days
from July 26.   He had now agreed to pay interest on the
$13,000 from the third day of the preceding June, and had
paid in cash said additional $1500, and had every reason
to believe that Fix and H. C. Morey & Co. were content
to let matters rest in the condition they were until the
objections to the title were obviated to his satisfaction,
or at least that no change would be made in the condi-
tion of affairs without giving him reasonable and specific

notice. He knew that all along, from the beginning, the clause declaring time to be of the essence of the contract, and other like clauses, had, by tacit agreement, remained in abeyance, and that all claims under them had been continuously waived. It may be that the rights of Fix under said clauses of the contract were not absolutely and permanently waived, but from the standpoint of a court of equity they were at least temporarily suspended, and capable of being reinstated only by giving a definite and specific notice of an intention to act under them. Good faith and fair dealing required that much. (*Palmer* v. *Ford, supra; Allen* v. *Woodruff, supra.*) In *Murphy* v. *Lockwood,* 21 Ill. 611, it was held, that in a contract for the conveyance of land, where the vendor has shown great indulgence, time not being of the essence of the contract, he may be prevented from suddenly insisting upon a forfeiture. To be sure, in the contract before us time was made matter of essence; but that provision was, at the time the attempted forfeiture was declared, temporarily eliminated from the contract, as we have heretofore seen, and so the principle involved in the decision just cited is applicable here.

It is asked, what notice should Fix or his agents have given White that his time to perform would on the 26th of August expire? Did he not know that without their telling him? It may be answered, that he also knew that he had not given notice of his objections to the title until eighteen days after the expiration of the time limited therefor, that the condition in that regard was expressly made of the essence of the contract, and that such breach of the contract had been waived; that he also knew that there had been like breach by the vendor himself of the condition in respect to curing defects within a specified number of days, that such condition was also expressly made of the essence of the contract, and that he had waived that breach; and that he knew that the vendor insisted that the defects in title had all been cured by

June 4, 1889, and that, on that theory, he, White, had been guilty of a breach of the contract in a condition which was of its essence, in not paying $4000 within five days after said June 4, and yet that the vendor and his agents had continuously since waived such breach, and had, by receiving an additional $1500 of purchase money, and in various other ways, recognized the continued existence of the contract. He was not bound to anticipate a sudden change of front. As we have suggested, the situation demanded, in the event it was proposed to insist upon a forfeiture, that a reasonable, definite and specific notice of such changed intention should be given.

But attention is called to the fact that the endorsed receipt for the $1500 was written in the presence of White, and that it used the expression "making $2000 total earnest money," and it is intimated that the use of that expression by the agents was sufficient notice to White of the changed intention. If White looked at the terms of the contract, or had them in his mind, he knew that the forfeiture of money provided for therein was of "the earnest money paid as above,"—*i. e.,* the $500 named in the contract. It is unreasonable to require of him, that, from the expression made use of as above stated, he should have anticipated that it was the intention of Fix or his agents to induce him to pay an additional $1500, and then claim a forfeiture of the whole $2000 paid as soon as a plausible pretext for so doing was afforded. He was no more bound to foresee this than he was required to anticipate that the $6000 increased value of the land would lead to the declared forfeiture.

We concur in the conclusion of the chancellor below that the forfeiture and notice of forfeiture were void and of no effect. That conclusion, under the circumstances of the case, is just and right and equitable. Forfeiture is a harsh remedy at best, and is by no means a favorite with a court of chancery under any circumstances, and

readily yields in that forum to the principle of compensa-
tion, if fair dealing and good conscience seem so to demand.

It is urged that no tender of the money due under the
contract is shown to have been made, *in fact*, at any time,
nor, if made, was such tender kept good and the money
brought into court. The abstract made by appellant
states the contents of the bill of complaint in this regard
as follows: "He hereby tenders to said Fix said $2500,
with interest from June 3, 1889, at six per cent, and said
trust deed, Ex. C, and said notes, Ex. D, E, G, and offers to
bring said notes and trust deed, to be placed in hands of
clerk, if required by the court, to be delivered to Fix
when the title shall have been made good and the abstract
brought down showing such defects to have been cured and
the title made good; offers to make any tender or do any
act the court may deem proper and reasonable, in accord-
ance with the terms of said contract and its extensions."

Fix, prior to the time he conveyed to appellant, had
executed the power to forfeit the contract of sale and the
earnest money, and such execution of the donated power
was an exhaustion of it until it was set aside, either of
his own motion, or by agreement, or by decree of a court.
Here it had not been set aside in either way, but Fix was
insisting that the execution of the power on September
7, 1889, was a valid and subsisting execution. Therefore,
the conveyance on October 4, following, to appellant, was
not intended to operate, and did not in fact operate, as
an execution of the power. It follows that the case of
*Warren* v. *Richmond*, 53 Ill. 52, is not an authority in this
case. White did not exhibit his bill for specific perform-
ance until a week after such conveyance, and four days
after he had notice of it. The deed to appellant demon-
strated to a certainty, what White already knew from
the acts and declarations of H. C. Morey & Co., that it
would be but a vain and idle ceremony to make a tender
*in fact* of the $2500, and demand a deed. Equity will not
demand of him that which is wholly useless for any pur-

pose. The technical rules that govern pleas of tender in actions at law are manifestly inapplicable to the circumstances of this suit in chancery. The general rule is, that to entitle a purchaser to demand a deed and maintain a bill for specific performance, it is sufficient that he is ready and offers to pay any sum that may be found to be due and still unpaid, and to comply with the contract on his part. *Mix* v. *Beach*, 46 Ill. 311 ; *Maughlin* v. *Perry & Warren*, 35 Md. 352; *Jenkins* v. *Harrison*, 66 Ala. 346.

Some objection seems to be made in respect to the joinder of parties in whose names the suit was revived after the death of John P. White. It is suggested that this should have been done in the names of Edward P. White and Lulu W. Rhodes, his heirs-at-law and residuary devisees and legatees under the will, and that the trustees under the will should not have been joined with them. This claim is placed upon the ground that nothing but a power seems to have been given the trustees over the estate. We do not so understand the will. The trustees are not clothed with a mere naked power or a mere naked trust. The trusts reposed in them are active trusts. Under clauses 4 and 6 of the will the trustees are required to purchase a fee ground-lease of about ninety-nine years, in order to produce an income for his widow of $3000 per year during her life, and they are authorized to use not exceeding one-half of his estate in making such purchase and producing such income. By clause 8 the trustees are directed to pay annually to Ellen Allen, sister of the deceased, during her life, the interest of six per cent upon $3000, and by clause 5 the duty of settling the partnership affairs of the firm of J. P. White & Co. is devolved upon the trustees. Under the residuary clause it is only "the balance of the estate" that is to be divided equally between Edward P. White and Lulu W. Rhodes. We think the trustees were properly joined. So, also, the administrator and administratrix were properly joined, for the purchase money of the land had not been fully

paid at the time of the death of the vendee. (Pomeroy on Specific Per. sec. 488.) And the surviving partner of the firm of John P. White & Co. was a proper party. So far as appellant and Fix are concerned the contract was one between Fix and the deceased. But the firm were dealers in real estate, and after the death of White the evidence disclosed that the beneficial interest or equitable title to the contract and property in litigation was in the firm, and that such contract and property were really partnership assets. At all events, upon the death of the vendee all persons who could by any possibility have an interest, under him, in the contract, were made complainants. No complaint was made in the lower court to the substitution.

The case of *Downing et al.* v. *Risley et al.* 2 McCart. Ch. (15 N. J. Eq.) 93, was a bill for specific performance, and in respect to parties was very much like the case at bar, and it was there held that all persons interested in the contract should be made parties to the proceeding. Here all parties in interest on the complainant side of the case were in court, and the court determined their equities as among themselves and as based upon an undisputed state of facts, and with that determination they are content, and they are bound by it, and the rights of the assignors of errors herein are not jeopardized thereby. The action and order of the court in the premises in no way affected or changed the rights of said assignors.

The cases of *Blue* v. *Blue et al.* 38 Ill. 9, and *Sevier* v. *Magguire et ux.* 49 id. 66, are not here in point, for the parties referred to in those cases were not before the court, while here Edward P. White, in his capacity of surviving partner, etc., was before the court.

Some minor questions are submitted in the briefs, but we do not deem it necessary to consider them in detail. Suffice it to say, that we find involved in them no substantial error.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*