## Theodore G. Dickinson et al. v. Willard C. Torrey.

1. FORFEITURES—*Under Contracts for the Sale of Real Estate.*—A party to an agreement for the sale of real estate is not in a position to declare a forfeiture while he is unable to make a title to the real estate in question.

2. CHANCERY PRACTICE—*On Rejection of Evidence Offered Before the Master.*—Where the master refuses to admit evidence offered, the party offering the same should take the question of the admissibility of such evidence before the chancellor and have his ruling thereon, when, if the contention is sustained the master could receive the evidence and pass upon it in making his report.

Bill, for specific performance. Error to the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in

this court at the March term, 1900. Affirmed. Opinion filed October 4, 1900.

Statement by the Court.—Plaintiff in error Dickinson, filed his bill February 17, 1898, against Willard C. Torrey, trustee of the Elgin & Chicago Land Investment Association, to enforce the specific performance of a contract for the sale of real estate from the firm of Snow & Dickinson to Frank Preston, as trustee of said association, or if the contract could not be specifically performed, then for a sale of the real estate and for a personal judgment against Torrey.

The contract is dated February 15, 1891, provides a purchase price for the real estate of $30,000, acknowledges the payment of $1,000 as earnest money, and the purchaser agrees to pay on the 15th day of March, 1891, $1,000 more, and on the 15th day of each and every month thereafter the sum of $1,000 until the whole purchase price should be paid, with interest at six per cent per annum; also has the following provision :

"Should said purchaser fail to perform his contract promptly on his part at the time and in the manner herein specified, the moneys paid as above shall, at the option of the vendors, be forfeited as liquidated damages, and this contract shall be and become null and void. Time is of the essence of this contract, and of all the conditions thereof.

"When the said party of the second part shall have paid the principal sum of ten thousand dollars with all interest, he shall be entitled to and receive a warranty deed conveying good title to said premises, and said second party shall execute trust deed and notes securing the balance of the purchase money."

The contract was signed in the name of Snow & Dickinson by Henry H. Fuller, who was a partner with said Dickinson and Snow under the firm name of Snow & Dickinson, engaged in the general real estate business in Chicago as agents and brokers. Said association is not a corporation but a voluntary association, composed of a number of persons for whom said Preston acted as trustee in making said contract. Preston resigned as trustee in March, 1892,

and said Torrey succeeded to all his right, title and interest under the contract and has ever since acted as trustee in place of Preston. In the year 1892, but at just what time does not appear, the firm of Snow & Dickinson was dissolved by the withdrawal of Snow, and a new firm composed of said Dickinson and Fuller was organized, under the firm name of T. G. Dickinson & Co., which acquired the assets of Snow & Dickinson and continued the same business until some time in 1893. Dickinson subsequently acquired the assets of the latter firm.

Torrey answered the bill of Dickinson and filed a cross-bill, to which Snow, Dickinson and Fuller were made parties. After answers of all the defendants to the cross-bill and replications to the respective answers, the cause was referred to a master to take proof and report his conclusions, which was done, and after objections were heard by the master and exceptions by the court, the master's report was approved and a decree entered in accordance with the prayer of the cross-bill, for a personal judgment against Snow, Dickinson and Fuller for the amount of money paid by the trustee of the association on its behalf under said contract, being the sum of $8,450, together with interest at five per cent per annum from February 3, 1898—in all $9,025. To reverse this decree Snow and Dickinson have prosecuted this writ of error.

Darrow, Thomas & Thompson and H. B. Wickersham, attorneys for plaintiffs in error.

Pliny B. Smith, attorney for defendant in error.

Mr. Justice Windes delivered the opinion of the court.

Two points are made by counsel for plaintiffs in error on account of which it is claimed the decree should be reversed, viz.: First, that the master excluded certain evidence of said Snow; and, second, that the master and chancellor erred in finding that the firm of Snow & Dickinson agreed to take and pay for twenty-five shares of stock in

said association, and even if such finding is correct under the evidence, still, that the firm of Snow and Dickinson is not bound thereby, for the reason, as they claim, that the agreement in that behalf was made by Fuller, without the assent, knowledge or authority of the other two partners, and that his action in that behalf was not subsequently ratified by them. We will consider these points in the reverse order in which they are made.

Besides the matters hereinabove stated, it was found from the evidence, by the master, that all the arrangements with reference to said contract were carried on between Fuller, representing the firm of Snow & Dickinson, and the two trustees; that when said association was formed for the purchase of the property in question, it was contemplated that 100 shares of stock, of the value of $300 each, were to be issued, to be represented by the certificates of the association, making in the aggregate $30,000, which was the purchase price of the property; that negotiations between the trustee of the association and Fuller resulted in the making of the said contract; that afterward a verbal agreement was entered into between Fuller and the trustee of the association, that the firm of Snow & Dickinson would take twenty-five shares of the association's stock, and to that extent would prorate in the payments to be made under the contract; that several letters were offered in evidence, signed Snow & Dickinson or T. G. Dickinson & Co., all written by Fuller while he was a member of one or the other of the firms, in which the agreements to take twenty-five shares of the stock was discussed; and the master also refers to other evidence tending strongly to show that such an agreement was made as well as acted upon by the firm of Snow & Dickinson, particularly payments made by them, aggregating $4,160.45, which were necessary to be made in order to carry out the contract; that Snow & Dickinson held themselves out as being the owners of the property, and that both the trustees testified that they supposed that Snow & Dickinson owned the property and were never told otherwise by any of the firm; and concludes that the

agreement to take twenty-five shares of the association's stock was made by Fuller on behalf of the firm, and that each member of the firm was bound by the agreement.

The master further finds that there was paid on the contract of sale by the trustee, on behalf of the association, to Snow & Dickinson, the total sum of $8,450 in amounts less than stipulated in the contract, and at regular intervals, and that it does not appear that the firm ever raised objection to the failure of the association to make full payment, and that the payments made by the association to Snow & Dickinson, added to the amount advanced by Snow & Dickinson, aggregated a sum considerably in excess of the $10,000 mentioned in the contract, which should be paid before the association should be entitled to a deed; that under the contract Snow & Dickinson were to make a deed of the property and furnish a guaranty policy of the title as soon as the association had paid the sum of $10,000 and interest, and had executed notes and a trust deed, securing the balance of the purchase price; that after such joint payments had been made, Torrey, the trustee, made repeated demands on Snow & Dickinson for a deed of the property, and offered to execute the trust deed and notes called for by the contract, and at the request of Fuller paid to him a sum of money sufficient to pay for the guaranty policy; that in several letters to the trustee, referred to by the master, the first of which was dated February 24, 1892, Snow & Dickinson wrote him that the deed for the land and papers for the transfer of the title to the trustee were being prepared, and in April, 1892, they called for the February payment, which was made, and that a deed would be made by a Mr. Hicks, who was their employe and who held the title for Snow & Dickinson (they having previously purchased the land from one Batchelor); that after this professed readiness on the part of Snow & Dickinson to convey the title, it developed that they were unable to obtain a title to the property, and could not convey to the association; that a bill was filed to remedy the defect in the title, and during its pendency foreclosure proceedings of certain

incumbrances on the property were begun, which resulted
in the title thereto becoming vested in a third party; that
pending these foreclosure proceedings no action was taken
by either of the parties to the contract looking to its rescis-
sion, but both parties made repeated efforts to carry out the
contract, all of which resulted in failure because Snow &
Dickinson could not obtain a title to the property. The
master concludes, in substance, on the matter of the con-
tract to purchase the property, that the association was not
in default, and the failure to consummate the contract was
due to the inability of Snow & Dickinson to make title
thereto.

The master further finds that as Snow & Dickinson were
trading in their own property, Fuller, being a member of
the firm, had authority to, and did bind them by his agree-
ment to take and pay for the twenty-five shares of the as-
sociation's stock, and that this agreement was made by
Fuller with the knowledge and consent of both his copart-
ners, and that the members of the firm are bound to return
the sum of $8,450 to the trustee, together with interest
thereon at five per cent per annum from February 3, 1898,
when demand was made upon them by the trustee for pay-
ment thereof.

A critical and careful examination of the evidence in
the light of the arguments of counsel has led us to the con-
clusion that the findings of the master, which have been
approved by the chancellor, can not be said to be and are
not manifestly against the evidence. This being so, we
should not disturb the finding. Siegel v. Andrews Co., 181
Ill. 350; Hubbard v. Hubbard, 79 Ill. App. 219.

If, on the matter of the knowledge and consent of Snow
& Dickinson to Fuller in the first instance to make the agree-
ment with the association to take the twenty-five shares
of stock, it could be said that the evidence fails to show
such knowledge and consent, then we think the prepon-
derance of the evidence shows that they subsequently rati-
fied his action in making the agreement. We deem it
unnecessary to refer in detail to the evidence bearing upon

these questions, but it seems to us incredible that Snow & Dickinson, who are clearly established by this record to have been the owners of the property described in the contract in question, would have advanced more than $4,000 of their money to aid the association, and have repeatedly declared their readiness to carry out their contract of sale of the property to the association, if they had not made the agreement to take and pay for the twenty-five shares of stock in the association. The action of Snow & Dickinson in receiving payments from time to time under the contract different from the amount and at different times from those provided in the contract, and their professed readiness at different times to make a conveyance of the property to the association, when, according to their claim, the association had not paid a sufficient amount to entitle it to its deed, is absolutely inconsistent with their present claim that they did not agree to take and pay for the twenty-five shares, and besides, precludes them from claiming that there was any forfeiture of the contract by the association. Cunningham v. Wrenn, 23 Ill. 64; Allen v. Woodruff, 96 Ill. 11–20.

And if this were not so, Snow & Dickinson are in no position, under the evidence, to claim a forfeiture, because it conclusively establishes that they were never in a position to make title to the association under the contract. Baker v. Bishop Hill Colony, 45 Ill. 273; Mix v. Beach, 46 Ill. 315; Peck v. Brighton Co., 69 Ill. 200; Vil. of Morgan Pk. v. Gahan, 35 Ill. App. 652.

In view of our conclusion that the contract to take the twenty-five shares of stock was made with the knowledge and consent of Snow & Dickinson, and even if it were not made with such knowledge and consent, that it was subsequently ratified, it becomes unnecessary to consider the point so fully presented and argued by the counsel of plaintiffs in error, that Fuller had no right, by virtue of any implied authority as partner, to bind the partnership, because, as they claim, his contract was not within the apparent scope of the partnership.

The master, on the examination of plaintiff in error Snow, refused, on objection, to allow him to answer whether he ever talked to any member of the firm about taking any interest in the Elgin association, whereupon counsel offered to prove as follows :

" That the firm of Snow & Dickinson never dealt or took any interest in syndicates for the purchase of real estate. That the firm was simply for the handling of real estate on commission and on a brokerage basis; that the firm or any member of it had no conversation or agreement at any time with any other member of the firm to take any interest in the Elgin association; that he never told Mr. Fuller on behalf of himself or of the firm to take any interest in the association, and that if Fuller did any such thing it was on his own responsibility."

On objection the master ruled that the witness could only testify to, dispute or deny the transactions had by Fuller with the association.

Notwithstanding this ruling of the master, counsel made no application to the court to require the master to admit the evidence in question, but without the rejected evidence allowed the master to proceed to make his report, and excepted before the chancellor to the ruling of the master in rejecting the evidence. This was not, in our opinion, the proper practice to pursue, but counsel, before the making of the master's report, should have taken the question of the admissibility of this evidence before the chancellor and had his ruling thereon, when, if the contention should have been sustained by the court, the master would then have received the evidence and passed upon it in making his report. We think that counsel should not be permitted thus to speculate upon the findings of the master and the chancellor, and should now be precluded from claiming that there was error in the master's ruling. Brueggestradt v. Ludwig, 184 Ill. 28-37.

But even if there was error in this regard, and if it be assumed that Mr. Snow would have testified as claimed by his counsel, still, with such evidence we can not undertake to say that the finding of the master and the court should have been different from what it was.

It is claimed on cross-error assigned on behalf of Torrey, trustee, that the master and the chancellor were in error in not allowing interest from April 1, 1892, instead of February 3, 1898, the last payment having been made by the association in March, 1892, and because, it is claimed, the action of Snow & Dickinson was fraudulent. We can not yield our assent to this contention, because we think the evidence establishes that in contemplation of the parties the agreement of purchase was in force up to the time of demand made by the trustee February 3, 1898, from which date interest was allowed. No interest seems to have been allowed between the date of the master's report and the decree by the chancellor, but no objection is taken in that regard. The decree of the Superior Court is therefore affirmed.